RALPH K. HAYES, ADMINISTRATOR (ESTATE OF
ANDREW HAYES) *v.* CASPERS, LTD., ET AL.
(AC 25400)

Lavery, C. J., and Harper and Peters, Js.

Argued June 6—officially released August 16, 2005

*Ralph J. Monaco*, with whom, on the brief, was *Patrick J. Day*, for the appellant (plaintiff).

*John P. Majewski*, with whom, on the brief, was *Elizabeth C. Burton*, for the appellees (named defendant et al.).

*Opinion*

PETERS, J. Unbeknownst to those involved in this tragic case, it can be fatal to take a substance called Invigorate[1] after having consumed alcohol. Translated into the language of the law, this tragedy devolves into a question of concurrent cause. A minor died because of injury to his nervous system resulting from drinking beer in a tavern and consuming Invigorate that was provided to him by an adult patron in the tavern's parking lot. The principal issue is whether the trial court properly instructed the jury that, even if the tavern was

---

[1] Invigorate is a substance chemically known as gamma-hydroxybutyric acid (GHB). At the time of the events in this case, its use was legal.

negligent in serving alcohol to the minor, it could not be held responsible for the minor's death unless the jury found the death to have been reasonably foreseeable in light of what the tavern knew at the time of the improper service. On this issue of common-law negligence, a jury returned a verdict in favor of the tavern. The trial court earlier had directed a verdict in favor of the tavern on other issues. The minor's estate has appealed. We affirm the judgment.

The plaintiff, Ralph K. Hayes, administrator of the estate of Andrew W. Hayes (Andrew), filed a three count complaint against the defendant Caspers, Ltd., the owner and operator of a bar and restaurant in Niantic known as the Lyme Tavern Café, and against the defendant Diane Lynch, its permittee (collectively referred to as the tavern). The complaint charged the tavern with common-law negligence, violation of the Dram Shop Act; General Statutes § 30-102; and recklessness.[2] In addition to denying its liability, the tavern filed a special defense charging Andrew with contributory negligence. The trial court directed a verdict in favor of the tavern on the second and third counts of the plaintiff's complaint. On the first count, common-law negligence, it refused to set aside the jury verdict in favor of the tavern.

The jury reasonably could have found the following facts, which are largely undisputed. On April 3, 1999, Andrew was twenty years old. Early that evening, he and his friends bought two thirty-packs of beer at a local

[2] The complaint also included a claim against Kevin Gibbs, who provided the Invigorate, and a claim against the Golden Spur Package Store, which sold beer to Andrew before he went to the tavern. These counts are not before us because Gibbs has obtained a discharge in bankruptcy and the package store has been relieved of further liability as a result of a settlement with the estate.

In addition, the tavern filed an apportionment complaint against Andrew's brother, who took Andrew home after he collapsed in the tavern. That complaint also is not before us.

package store. For several hours, they drank together. Between midnight and 1 a.m., Andrew joined these and other friends at the tavern, where he drank at least one glass of beer.

While at the tavern, Andrew sought out Kevin Gibbs, another patron at the tavern, because he had heard that Gibbs had a substance that would help Andrew "to feel good." Andrew and Gibbs went together to Gibbs' truck, which was parked in the tavern's parking lot. Gibbs had a bottle containing a substance called Invigorate in his truck. Andrew took a sip of Invigorate.

Shortly after returning to the tavern, Andrew collapsed. The tavern left it to Andrew's brother and friends to take charge of Andrew. Andrew was taken to his brother's house. Several hours later, his brother found him motionless and not breathing. Andrew was then rushed to Lawrence and Memorial Hospital in New London, where a physician pronounced him dead. A medical examination led to the diagnosis that Andrew had died either as a result of having consumed Invigorate alone or because of his consumption of the combination of Invigorate and alcohol.

In his appeal from the judgment in favor of the tavern, the plaintiff has raised numerous issues of law that fall under three headings. The plaintiff claims that the trial court improperly (1) instructed the jury on common-law negligence, (2) excluded some evidence and admitted other evidence and (3) directed the jury to return a verdict in favor of the tavern with respect to allegations that the tavern (a) violated the Dram Shop Act and (b) acted negligently in failing to call an ambulance for Andrew when he collapsed.[3] We are not persuaded by any of these claims.

---

[3] The trial court also directed a verdict in favor of the tavern on the third count of the plaintiff's complaint, which charged the tavern with having behaved recklessly. The plaintiff has not appealed from this ruling.

# I

## JURY INSTRUCTIONS ON COMMON-LAW NEGLIGENCE

Throughout this case, the plaintiff's principal claim has been that the tavern negligently failed to comply with its common-law duty to protect Andrew, a minor, from the events that caused his death. While acknowledging that Andrew's consumption of Invigorate played a role, the plaintiff maintains that the tavern's negligence in serving Andrew alcohol was a direct and proximate cause of his death. The centerpiece of the plaintiff's appeal is that the court gave the jury improper instructions on proximate cause.[4]

The plaintiff disagrees with the charge on proximate cause on two grounds. His broader claim is that, under the circumstances of this case, liability for common-law negligence does not require any proof of foreseeability whatsoever. His narrower claim is that the manner in

---

[4] In addition to his contention that the court's instructions on proximate cause were improper, the plaintiff also argues that the court should have honored the plaintiff's request to instruct the jury on two other aspects of common-law negligence. These claims are unpersuasive.

First, the plaintiff maintains that the court should have told the jury that the tavern was negligent not only in permitting Andrew to enter the tavern but also in failing to check to see whether he had any identification to establish his age. Although the plaintiff introduced evidence that it was the tavern's practice to check identification, the plaintiff did not list the tavern's failure to check Andrew's identification as one of its allegations of negligent conduct on the tavern's part. We agree with the tavern that, on this record, the court's failure to charge was justified. Even if that were not so, it is difficult to see why this allegation of negligence was not subsumed under the allegation that the tavern improperly served alcohol to Andrew.

Second, the plaintiff maintains that the court should have told the jury that, if other conditions were met, the tavern would be liable for improper service of alcohol to Andrew regardless of whether Andrew *consumed* the alcohol. The tavern points out, however, that, at the time of the charge conference, the plaintiff expressly agreed with the court's construction of *Bohan* v. *Last*, 236 Conn. 670, 674 A.2d 839 (1996), as including consumption as an element of liability. Although the plaintiff now claims that he did not mean to say what he did, the trial court was entitled to take him literally.

which the court instructed the jury on foreseeability improperly required him to prove that the tavern should have anticipated the actual circumstances of Andrew's death and departed from our Supreme Court's recently restated law of intervening cause. We disagree with both of these claims.

Our consideration of a claim of instructional error is governed by a well established standard of review. "When a challenge to a jury instruction is not of constitutional magnitude, the charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper."[5] (Internal quotation marks omitted.) *State* v. *Russo*, 89 Conn. App. 296, 302, 873 A.2d 202 (2005).

A

The court instructed the jury that, even if it found that the tavern had been negligent in serving beer to Andrew, a minor, the tavern could not be held legally responsible for Andrew's death unless its misconduct was a substantial factor in bringing his death about. In order to be a substantial factor, the court charged, "the harm that [Andrew] sustained [had to be] reasonably foreseeable based on what [the tavern] knew at the time."

---

[5] The plaintiff maintains that the fact that the jury asked for reinstruction on the law of proximate cause demonstrates that the court's charge on this issue was so confusing as to be reversible error. Standing by itself, the jury's request does not demonstrate instructional error. The test is whether the court appropriately informed the jury of the governing law.

In the plaintiff's view, this charge was improper because, with respect to service of alcohol to minors, foreseeability of any consequent injury is presumed by the law. This argument is based principally on the proposition that, in light of General Statutes § 30-86,[6] which forbids such service, the tavern's misconduct constituted negligence per se.

Our Supreme Court has addressed the relationship between common-law negligence and this very statutory prohibition. In *Bohan* v. *Last*, 236 Conn. 670, 680, 674 A.2d 839 (1996), the court held that, despite the statute, "the common law liability of purveyors of alcohol [is limited] to those who knew or had reason to know that they were making alcohol available to a minor." That holding was recently reaffirmed in *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003), which held that a person who provides alcohol to someone who should not have been served bears legal responsibility for "a reasonably foreseeable risk of injury" arising out of the improper service.[7]

We agree, therefore, with the trial court's ruling that the plaintiff cannot prevail on his claim of common-law negligence without proof of foreseeability of the disaster that overtook Andrew. Liability for service of alcohol to a minor is not unconditional.

B

The plaintiff's narrower objection to the trial court's charge on foreseeability is his claim that the court

[6] General Statutes § 30-86 (b) provides in relevant part: "Any permittee or any servant or agent of a permittee who sells or delivers alcoholic liquor to any minor . . . shall be subject to the penalties of section 30-113. . . ."

[7] In response to *Craig* v. *Driscoll*, supra, 262 Conn. 312, the legislature amended the Dram Shop Act, General Statutes § 30-102, by Public Acts 2003, No. 03-91, so as to prohibit a "cause of action against such seller [of alcohol] for negligence in the sale of alcoholic liquor to a person *twenty-one years of age or older*." (Emphasis added.) Significantly, the legislature did not change the common-law rules governing negligence in the sale of alcohol to a minor.

improperly defined the role of foreseeability in the context of an injury that resulted from the combination of two independent events. He maintains that the court's instructions on the effect of an intervening cause were improper for three reasons. He argues that (1) the court's foreseeability test was overly stringent because, in effect, it required the plaintiff to prove that the tavern should have foreseen the specific circumstances that led to Andrew's death, (2) the court asked the jury to engage in a comparative negligence analysis that, although relevant to the tavern's affirmative defense of contributory negligence, was misleading in the context of a substantial factor analysis and (3) the court's instructions were inconsistent with our Supreme Court's recent decision abolishing the concept of superseding cause.

1

The plaintiff takes issue with the court's instruction about the relationship between the tavern's negligent service of beer to Andrew and Gibbs' role in providing him Invigorate. Concededly, the record contains *no* evidence that Andrew would have died without having taken Invigorate.

The court told the jury that the plaintiff had to prove that it was reasonable for the tavern to foresee that, after consuming alcohol, Andrew "would die after ingesting a dangerous substance that was legal." The court further stated that the tavern's negligent conduct could not be found to have been a substantial factor in bringing an injury about if "some other cause or causes contribute so powerfully to the production of an injury as to make the [tavern's] negligent contribution to the injury merely trivial or inconsequential . . . ." It, however, also instructed the jury that "[n]egligent conduct can be a proximate cause of an injury even if it's not the nearest or the most immediate cause of an

injury" if it "contributed materially to the death" and the death was "a harm that a reasonably prudent person in the position of the people at the [tavern] should have anticipated. . . ." Finally, it told the jury that, in order to decide that the tavern should have foreseen the risk of Andrew's death, the jury would have to find that the harm that occurred was an injury "of the same general nature as that which a reasonably prudent person in the [tavern's] position should have anticipated in view of what the [tavern] knew or should have known at the time of [the] negligent conduct."

The plaintiff argues that this charge was improper because the jury should have been told that the tavern could be found liable for Andrew's death even if (1) the tavern neither foresaw nor should have foreseen the extent of Andrew's injury or the manner in which it occurred or (2) an intervening cause contributed to Andrew's injury. In the plaintiff's view, the tavern's negligence could be found to have played a substantial role in the death even though the precise nature of the harm that befell Andrew was not foreseeable.

To succeed in this claim, the plaintiff must distinguish this case from *Craig* v. *Driscoll*, supra, 262 Conn. 312, on which the trial court based its instructions. True, that case is factually different. *Craig* involved a tavern's liability to a third party for injuries received as a result of the negligent conduct of an inebriated adult automobile driver. Id., 314–15. In this case, the tavern's alleged service of alcohol to a minor resulted in an injury to Andrew himself rather than to a third party. Despite these differences, we agree with the trial court that *Craig* gives guidance on the law of intervening cause in this case.

The plaintiff does not distinguish *Craig* factually. He argues that the charge invited the jury to focus too heavily on Andrew's ingestion of Invigorate and to

ignore evidence establishing that drinking alcohol was a concurrent cause of his death. This argument reiterates the plaintiff's disagreement about the court's view of foreseeability in this case, which we already have rejected.

2

The plaintiff also maintains, however, that the trial court improperly asked the jury to engage in a comparative negligence analysis that, although relevant to the tavern's affirmative defense of contributory negligence, was misleading in the context of a substantial factor analysis. Specifically, he claims that the court improperly required the jury to find a *specific* risk foreseeable in order to hold the tavern liable. That claim misstates the instruction actually given, which referred to an injury "of the same *general nature* as that which a reasonably prudent person" (emphasis added) in the tavern's position should have foreseen. Again, the language used by the court replicates the instructions approved in *Craig*.

3

In the plaintiff's final argument on causation, he argues that *Craig* is no longer good law because, in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003), our Supreme Court removed the defense of superseding causation from our common-law negligence jurisprudence. Contrary to the plaintiff's assertion, the Supreme Court did not decide that intervening events would no longer play a role in assessing liability for negligent conduct. Instead, it held that analysis of causation issues relating to such events should be governed by the general law of proximate cause rather than by the assignment of a dispositive role to any one of the causes contributing to a plaintiff's injury. Id., 446. One reason for the court's decision was its recognition of the dominant role that comparative

negligence has come to play in our assignment of responsibility for personal injury. Id., 442–46.

The court's instruction on proximate cause in this case reflected the holding in *Barry*. The court told the jury that "the ultimate test for all of this, that is, when you have intervening causes, if you find there's an intervening cause, then you have to apply the test that I just told you about, which is the negligence that you found on the part of, let's say, the first person, is it reasonably foreseeable to that first person, if they are negligent in that manner, based on what they know at the time, that the harm that occurred, that general type of harm, not any harm, not any injury . . . not that somebody would jump off the roof, but that harm would occur is foreseeable?"

The plaintiff faults this charge as asking the jury to decide whether *Andrew*'s intervening misconduct could break the chain of causation. This is a puzzling argument. The plaintiff never alleged that *Andrew* was negligent, either in drinking beer or in sipping a substance that was legal. Furthermore, as the tavern aptly notes, the court never gave such an instruction to the jury. The plaintiff's reply brief does not refute the accuracy of the tavern's observation.

Alternatively, the plaintiff argues that the court's instructions were defective in departing from "a standard proximate cause charge and [failing to give the jury] a separate charge on comparative responsibility and contribution." We already have noted our disagreement with the plaintiff's view that foreseeability is not an important element of an appropriate charge on proximate cause. The plaintiff has neither identified nor reproduced the court's charge on comparative negligence or the relationship of the charge to the tavern's claim of contributory negligence. We decline, therefore, to discuss this issue any further.

As this case illustrates, it is not easy to state clearly the law governing the liability of one negligent actor for an injury to which the conduct of another actor has made a significant contribution. A recent attempt to simplify this area of the law is contained in the Restatement Third of Torts.[8] Chapter six of the Restatement presents the view of the American Law Institute that jury instructions that describe the relationship between tortious behavior and injury in terms of proximate cause might usefully be replaced by instructions focusing directly on the scope of tort liability in a particular case. 6 Restatement (Third), Torts § 29, comment (b), pp. 576–77 (Proposed Final Draft No. 1) (April 6, 2005). Accordingly, the Restatement begins its discussion of this subject with the reminder that "[t]ort law does not impose liability on an action for all harm factually caused by the actor's tortious conduct." 6 Restatement (Third), Torts, introductory note, p. 574. The Restatement then replaces reference to proximate cause with the statement, in § 34, that "[w]hen . . . an independent act is also a factual cause of physical harm, an actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious."[9] The case that § 34 describes is this case. The court's instructions in this case, although worded in terms of traditional usage, functionally mirror the test described in § 34.

In sum, we conclude that the plaintiff's disagreement with the trial court's instructions on proximate cause

---

[8] The draft was approved at the May 2005, annual meeting of the American Law Institute.

[9] In Doe v. Manheimer, 212 Conn. 748, 758, 563 A.2d 699 (1989), overruled in part on other grounds by Stewart v. Federated Dept. Stores, Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995), our Supreme Court adopted a similar test: "The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." The Restatement Third's reformulation replaces the formal inquiry into proximate cause envisaged by §§ 440-43 of 2 Restatement (Second), Torts (1965), without purporting to challenge the validity of the legal conclusions reached by courts using the earlier nomenclature.

and intervening causation is not well founded. The Restatement Third of Torts provides yet another basis for sustaining the validity of the court's instructions to the jury in this case.

## II

The plaintiff's second major disagreement with the trial court questions the validity of three of the court's evidentiary rulings. The plaintiff claims that the court improperly (1) precluded the plaintiff's expert from testifying about the impact of delay in treatment on Andrew's death, (2) excluded conclusions about the tavern's conduct contained in a report by a special investigating officer of the liquor control commission and (3) allowed the tavern to cross-examine the plaintiff's expert witness with respect to a pending product liability action that the plaintiff had filed in federal court. We are not persuaded.

"It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002). "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, [it] has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Raudat* v. *Leary*, 88 Conn. App. 44, 50, 868 A.2d 120 (2005). With this standard in mind, we next address the merits of the plaintiff's evidentiary claims.

## A

The plaintiff's first evidentiary claim is that the court should not have precluded the plaintiff's medical expert

from testifying about whether delay in bringing Andrew to a hospital played a role in Andrew's death. If admitted, this evidence would have supported the plaintiff's claim that the tavern acted negligently in not calling an ambulance for Andrew as soon as he collapsed. In support of the plaintiff's contention that the court's ruling was an abuse of its discretion, he argues that the court read Practice Book § 13-4 too narrowly. We disagree.

Practice Book § 13-4 (4) provides in relevant part: "If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure . . . will cause undue prejudice to the moving party . . . ." This section authorizes a court to preclude an expert from testifying about professional opinions that were not properly disclosed. See, e.g., *Ali* v. *Community Health Care Plan, Inc.*, 261 Conn. 143, 151 n.7, 801 A.2d 775 (2002); *Bartlett* v. *Heise*, 84 Conn. App. 424, 427, 853 A.2d 612 (2004).

In his disclosure of Marc Bayer, a physician, as an expert witness, the plaintiff stated that Bayer would testify "that the substance Invigorate taken by the plaintiff was defective and unreasonably dangerous and a substantial factor in causing the death of [the decedent]."[10] The plaintiff's disclosure contained no refer-

---

[10] The plaintiff also disclosed that "Bayer is expected to testify that [the decedent] died from a combination of Gamma-Hydroxybutyric Acid (GHB) and alcohol. He will further testify that Invigorate contains a substance (2) (H) furanone, di-hydro. He will further testify that ingestion of GHB either alone or in combination with other drugs acts to depress the brain function and can [lead] to coma or death. He will further testify that GHB is promoted for many unsubstantiated health claims, while minimizing and denying the substantial danger associated with its use. Fatalities occur from the abrupt loss of consciousness which can lead to suffocation when the airway is

ence whatsoever to the need for emergency medical treatment following Andrew's collapse.

Conceding that this disclosure did not expressly refer to the effect of delay in medical treatment, the plaintiff argues that a causal relationship between such delay and the decedent's death was implied in the disclosure that the expert would testify about a causal relationship between the decedent's ingestion of Invigorate and his death. It follows, according to the plaintiff, that the tavern should have expected the expert to testify about other causal relationships not specified in the disclosure. Like the trial court, we are not persuaded.

The plaintiff's broad interpretation of Practice Book § 13-4 cannot be reconciled with our case law interpreting that section's disclosure requirements. See, e.g., *Bartlett* v. *Heise*, supra, 84 Conn. App. 427 (excluding expert testimony where plaintiff failed to disclose subject matter of proposed testimony); see also *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 46–47, 830 A.2d 240 (2003) (holding Practice Book § 13-4 violated where "defendants' disclosure of their experts discussed the subject matter on which the experts were to testify, the substance and facts of their opinion, and the summary of the grounds for their opinion in general, all encompassing and vague terms"); *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 759–60, 785 A.2d 588 (2001) (holding similarly). The plaintiff has not cited, nor are we aware of, any contrary authority.

Our review of the plaintiff's disclosure persuades us that he failed to provide the tavern with adequate notice

blocked. He is further expected to testify that the Invigorate was defective and unreasonably dangerous and ultimately resulted in the death of [the decedent]. He will further testify that the use of Invigorate was a substantial factor in causing the decedent's death. He will also testify with regard to the amount of alcohol that was in the decedent's system at the time of his death."

that Bayer would testify about the effect of delay on Andrew's death. Accordingly, we conclude that the court did not abuse its discretion in excluding that portion of Bayer's testimony.

## B

The plaintiff next claims that the court improperly excluded the testimony of a liquor control commission investigating officer about certain findings of the commission that resulted from an investigation of the tavern after Andrew's death. In particular, the plaintiff argues that the court improperly excluded evidence that the tavern failed to comply with an agreement with the commission for the payment of a fine and a five day shutdown of the tavern's business. The agreement was the result of a settlement.

The plaintiff claims that the trial court based its decision to preclude this evidence on an improper application of the law of nolo contendere. The record belies this assertion.

Although the court drew several analogies between nolo contendere pleas and the tavern's agreement with the commission, the court based its ruling on two other grounds. First, the court observed that the plaintiff had not identified in the administrative record any *factual* statements by the tavern that could be construed as admissions of liability. See *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 198, 602 A.2d 1011 (1992) (representations of fact are exceptions to rule of inadmissibility of statements made in settlement negotiations).[11] Second, the court determined that the plaintiff could not rely on the agreement as res judicata because administrative proceedings are not governed by the formal rules of evidence.

---

[11] The plaintiff has not voiced any disagreement with the court's observation.

It is undisputed that the agreement between the tavern and the commission was a settlement agreement. The plaintiff does not question the accepted principle that, to promote settlements, evidence of settlement negotiations generally is inadmissible in later proceedings. See id.[12] Indeed, he does not dispute the fact that the commission and the tavern expressly stipulated that the agreement would not be used against the tavern in any civil proceeding.

We conclude, therefore, that the record fully supports the court's exclusionary ruling. The court properly refused to permit the plaintiff to introduce the settlement agreement into evidence.

## C

The plaintiff's final evidentiary claim is that the court improperly allowed the tavern to cross-examine Bayer, the plaintiff's expert witness, about the plaintiff's product liability action that was then pending in federal court. According to the plaintiff, this cross-examination was improper because it was not relevant to the expert testimony that Bayer gave during his direct examination. Alternatively, even if the cross-examination was admissible to test Bayer's credibility, the plaintiff contends that its meager probative value was outweighed by the risk of unfair prejudice. We disagree.

All relevant evidence is admissible except as provided by the federal or state constitutions or Connecticut statute. Conn. Code Evid. § 4-2. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is

---

[12] A different rule might apply if the settlement agreement had become a stipulated judgment. See *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 83, 755 A.2d 196 (2000); *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 706 n.8, 700 A.2d 1179 (1997). The plaintiff has not made such a claim.

sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 29, 807 A.2d 955 (2002). The fact that evidence may be subject to several interpretations does not affect its admissibility as long as it can be construed as relevant. *State* v. *Sanchez*, 69 Conn. App. 576, 584, 795 A.2d 597 (2002).

Bayer prepared for this case by writing a report that became an exhibit in this case.[13] In his report, he referred to several documents that he had consulted in formulating his opinions. During direct examination, Bayer testified that one of those documents was the complaint from the plaintiff's pending products liability action.

Inconsistently with his testimony on direct examination, on cross-examination Bayer testified that he neither reviewed nor relied on any legal pleadings in reaching his conclusions. Cross-examination on the content of these documents was proper because Bayer's testimony on direct "opened the door" to later inquiry on that topic. See *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 95, 709 A.2d 14 (1998); *Jenkins* v. *Kos*, 78 Conn. App. 840, 844, 829 A.2d 31 (2003). Inconsistency in the basis for Bayer's testimony was relevant to the issue of Bayer's credibility.

The plaintiff argues that, even if marginally relevant, this testimony should have been excluded because it was unduly prejudicial. Specifically, the plaintiff con-

---

[13] The plaintiff asserts that he offered this report for purposes of identification, not as a full exhibit. The record belies this claim. The plaintiff apparently mismarked the exhibit and offered it as a full exhibit. After Bayer had testified, the plaintiff realized his error and requested that the court remove the report from evidence. The court denied his request on the ground that he had failed to comply with the trial management order and expressed its concern that "somebody else may have relied on it coming in." Accordingly, the court properly ordered that the report be admitted as a full exhibit.

tends that such references "were designed to . . . allow the jury to speculate that [p]laintiff had an alternative avenue of recovery. . . ." He argues that, without an instruction that the law prohibits double recovery, the jury was left to speculate as to why the plaintiff should be permitted to recover twice for the same injury. We disagree with this claim.

It was the plaintiff's responsibility to demonstrate that it is more probable than not that references to the federal lawsuit during Bayer's cross-examination affected the jury's verdict. See *Raudat* v. *Leary*, supra, 88 Conn. App. 50. In effect, he asks us to presume that the identity of the facts underlying the state and the federal litigation led to jury confusion about his right to recover in this case. That confusion might have taken the form of concern about the possibility of double recovery or about misinterpretation of the federal pleadings as admissions on the part of the plaintiff. Cf. *Mamudovski* v. *Bic Corp.*, 78 Conn. App. 715, 729, 829 A.2d 47 (2003), appeal dismissed, 271 Conn. 297, 857 A.2d 328 (2004) (certification improvidently granted); 2 C. McCormick, Evidence (4th Ed. 1992) § 265, pp. 189–90.

In fact, the trial court recognized and addressed the possibility that the jury might use this evidence for drawing inferences that had nothing to do with Bayer's credibility. It instructed the jury that "[t]he rules of evidence allow, in regard to expert testimony, that whatever information was in the hands of the expert, which was provided to him, may be cross-examined about for purposes of determining what [he] had, what [he] used, how complete [his] information was. . . . The item you are about to see is not in evidence substantively . . . which means it is not being used for the truth of what it says. . . . [W]hatever its content is, you cannot assume it's true for purposes of determining the facts in this case. It's being offered to show what information

the doctor had . . . and how it might have affected him."

The plaintiff does not take issue with the wording of the court's instruction. His claim must be construed, therefore, as an argument that the risk of prejudice in this case was so great that a cautionary instruction was irrelevant. There may be cases that fit this description, but this case is not one of them. We presume that jurors follow jury instructions. *State* v. *Peeler*, 267 Conn. 611, 638, 841 A.2d 181 (2004).

We conclude, therefore, that the court properly overruled the plaintiff's objection to the cross-examination of Bayer. Guided by the court's cautionary instruction, the jury properly was permitted to consider whether inconsistency in Bayer's testimony with respect to federal pleadings put into question the reliability of his assessment of causes for Andrew's death.

### III

In addition to his challenge to the trial court's jury instructions and its evidentiary rulings, the plaintiff argues that the judgment of the court must be set aside because the court improperly excluded two issues from jury consideration. These arguments question the validity of the court's decision to direct a verdict in favor of the tavern with respect to the plaintiff's claim that the tavern (1) violated the Dram Shop Act by serving Gibbs alcohol at a time when Gibbs was inebriated and (2) negligently failed to call an ambulance for Andrew.

### A

In count two of his complaint, the plaintiff alleged that, on the date of Andrew's death, the tavern's sale of alcohol to Gibbs violated the Dram Shop Act, General Statutes § 30-102, because it caused Gibbs to become

intoxicated.[14] The statute provides in relevant part that "[i]f any person . . . sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured . . . ."

The trial court directed a verdict in favor of the tavern on this claim. Our standard for reviewing a challenge to a directed verdict is well settled. "Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Beale* v. *Yale-New Haven Hospital*, 89 Conn. App. 556, 565–66, 874 A.2d 259 (2005).

To prevail on a dram shop claim, a plaintiff must prove: "(1) the sale of the alcoholic liquor; (2) that the sale was to an intoxicated person; and (3) that the intoxicated person caused injury to another's person or property as a result of his or her intoxication." (Emphasis added.) *Craig* v. *Driscoll*, supra, 262 Conn. 328. Proof of sale to an intoxicated person requires proof of "something more than to be merely under the influence of, or affected to some extent by, liquor.

---

[14] In his complaint, the plaintiff also alleged that the tavern had violated the Dram Shop Act, General Statutes § 30-102, by serving alcohol to Andrew. Because § 30-102 requires injury to "another," the trial court granted the tavern's motion for a directed verdict on that claim. The plaintiff has not challenged this ruling on appeal.

Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so." *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349–50, 493 A.2d 184 (1985).

The court directed a verdict on the plaintiff's dram shop claim because it found that, although Gibbs himself testified that he had been intoxicated on the night in question, the plaintiff presented no evidence that Gibbs was *visibly* intoxicated. In light of *Sanders*, this finding is fatal to the plaintiff's claim.

The court's finding cannot be overturned unless it was clearly erroneous. Practice Book § 60-5; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We are not persuaded that it was. The plaintiff has not brought to our attention any part of the record that contradicts the court's finding. Accordingly, the plaintiff cannot prevail on his claim under the Dram Shop Act.

B

The plaintiff also claims that the trial court improperly directed the jury to return a verdict in favor of the tavern on one part of his negligence complaint. In paragraph 16 (c), the plaintiff alleged that the tavern

had acted negligently and carelessly because it "failed to take reasonable action, such as calling for an ambulance when [Andrew] became sick, semi-conscious . . . or unconscious . . . ."

The plaintiff does not deny that, in order to take this issue to the jury, he had to introduce expert evidence linking Andrew's death to his failure to receive prompt medical attention from the tavern. As previously noted, although the plaintiff tried to elicit such testimony from his expert witness, Bayer, this effort was unsuccessful because of the absence of relevant information in the plaintiff's disclosure of the matters on which Bayer would testify. Our affirmance of this evidentiary ruling by the trial court is dispositive on this issue.

IV

We conclude that, under the circumstances of this case, the trial court properly rendered judgment in favor of the tavern. Our case law holds that a tavern can be held liable if its negligent service of alcohol to a minor plays a role in a minor's negligent operation of his car so as to injure himself or others. The premise underlying this case law is that the disastrous results of drunken driving have become foreseeable. *Craig* v. *Driscoll*, supra, 262 Conn. 336–41; *Bohan* v. *Last*, supra, 236 Conn. 676–77.

Our case is demonstrably different. What we have here is a death that, according to the undisputed testimony at trial, could not have occurred without the ingestion of a substance that had dangerous consequences for a beer drinker like Andrew. In the absence of foreknowledge of medical discoveries yet to be made, the tavern could not have foreseen Andrew's death. The tavern's liability for its negligent service of beer to Andrew is not unlimited. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 571–75, 864 A.2d 1 (2005). The risks that the tavern assumed by its miscon-

duct did not include the risk of an entirely unforeseeable death attributable to the unknown impact of the combination of alcohol and Invigorate. The unhappy circumstances of this case do not diminish the loss suffered by Andrew's family and friends, but they absolve the tavern from civil liability for its negligent service of alcohol to a minor.

The judgment is affirmed.

In this opinion the other judges concurred.