# GREG BEALE *v.* YALE-NEW HAVEN HOSPITAL
## (AC 25287)

DiPentima, McLachlan and Hennessy, Js.

Argued February 22—officially released June 14, 2005

*John R. Williams*, for the appellant (plaintiff).

*Erika L. Amarante*, with whom was *Aaron S. Bayer*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. In this statutory negligence action, the plaintiff, Greg Beale, appeals from the judgment rendered by the trial court after it directed a verdict in favor of the defendant, Yale-New Haven Hospital. The sole issue on appeal is whether the court properly directed the verdict on the basis of the plaintiff's failure to establish that the defendant's conduct proximately caused him any injury. We affirm the judgment of the trial court.

The plaintiff has a long history of mental illness marked by several psychiatric hospitalizations and various diagnoses, including schizoaffective disorder and bipolar disorder with paranoid delusions. On May 4, 1998, the plaintiff went to the Connecticut Mental Health Center (center) in New Haven and requested a psychiatric evaluation in order to obtain a certificate for Probate Court stating that he was restored to mental capacity. Gail Sicilia, a clinician at the center who previously had treated the plaintiff, met with him and found him to be irritable, paranoid, angry and unable to sit down when talking. Sicilia telephoned the Probate Court to obtain more information about the plaintiff's request and, while she was doing that, the plaintiff abruptly left the center. Sicilia later telephoned the plaintiff at home to notify him that the center was willing to evaluate him. The plaintiff then became very angry and stated that he wanted to tape record the session. When Sicilia informed the plaintiff that center policies precluded him from recording his evaluation, he responded that if he was not permitted to bring a tape recorder into the building, "he would not leave and wanted to be arrested."

The following morning, the plaintiff arrived at the center with a tape recorder for his evaluation. At the security entrance, he was advised by police officers that he was not permitted to bring the device into the building. The plaintiff refused to leave the recorder with the officer at the front desk and became hostile, insisting on bringing it with him into the hospital. One of the officers, Lieutenant Sal Manganaro, asked the plaintiff if he was a patient of the hospital so that Manganaro could telephone the plaintiff's clinician to ask if he could bring the recorder with him. The plaintiff became increasingly hostile at that inquiry, stating that he would not participate in further conversation, and that he would not leave the area and would stay in the entryway all day.

Manganaro requested that the plaintiff leave the facility and, after he refused, Manganaro and other police officers handcuffed him and escorted him to the center's public safety office. While there, the plaintiff seemed delusional and was making various nonsensical statements. After being advised by Sicilia that the plaintiff should be evaluated at the hospital, Manganaro escorted the plaintiff to the Yale-New Haven Hospital emergency room on a police emergency examination request,[1] which stated Manganaro's belief that the plaintiff "is mentally ill and is dangerous to himself."

Upon his arrival at the emergency room, the plaintiff was taken to the crisis intervention unit, a section of the emergency room that specializes in treating individuals exhibiting urgent psychiatric problems. Once at the cri-

---

[1] Emergency examination requests are statutorily permitted by General Statutes § 17a-503 (a), which provides in relevant part: "Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination . . . ."

sis unit, the plaintiff became aggressive and threatened various members of the hospital staff. Due to his increasing agitation and threatening behavior, the hospital staff removed the plaintiff's handcuffs and placed him in four point restraints.

At that time, Sule Tokmakcioglu, a physician in the crisis unit, examined the plaintiff and found him to be agitated, psychotic and paranoid. Upon determining that the plaintiff was a danger to himself and to others, Tokmakcioglu ordered the plaintiff to be medicated with a single dose of three separate medications, Ativan, Trilafon and Cogentin. The plaintiff did not consent to that medication.

At approximately the same time, another physician, Claudia Bemis, signed a physician emergency certificate,[2] admitting the plaintiff involuntarily to the hospital's psychiatric ward. Bemis indicated in her notes that the plaintiff was "agitated, intermittently illogical and delusional," and concluded that he was "dangerous to himself . . . or others." After being successfully medicated, the plaintiff was then released from the four point restraints and transferred from the crisis unit to the hospital's psychiatric ward where he was treated and discharged three days later.

On May 9, 2000, the plaintiff filed a two count complaint against the defendant. In the first count, the plaintiff alleged that the defendant's act of forcibly administering to him the single dose of medication on

---

[2] Physician emergency certificates are permitted by General Statutes § 17a-502 (a), which provides in relevant part: "Any person who a physician concludes has psychiatric disabilities and is dangerous to himself or others or gravely disabled, and is in need of immediate care and treatment in a hospital for psychiatric disabilities, may be confined in such a hospital, either public or private, under an emergency certificate as hereinafter provided for not more than fifteen days without order of any court . . . ."

May 5, 1998, violated General Statutes § 17a-543 (a),[3] which prohibits administering medication without a patient's informed consent, and caused him severe emotional distress.[4] The second count, which was based on the same facts, alleged that the defendant committed an assault and battery. In its answer filed on August 2, 2000, the defendant made a general denial of the allegations and did not assert any special defenses.

On June 7, 2002, the parties participated in arbitration proceedings pursuant to General Statutes § 52-549u.[5] The parties litigated the applicability of § 17a-543 (b),[6] which allows a hospital to administer medication to a patient without consent in certain narrow circumstances, including a situation in which obtaining consent "would cause a medically harmful delay to a . . . patient whose condition is of an extremely critical nature . . . ."

In July, 2003, the defendant filed a motion to preclude the plaintiff from disclosing any expert witnesses on

---

[3] General Statutes § 17a-543 (a) provides in relevant part: "No patient shall receive medication for the treatment of the psychiatric disabilities of such patient without the informed consent of such patient, except in accordance with procedures set forth in subsections (b), (d), (e) and (f) of this section . . . ."

[4] To be clear, the plaintiff claimed only that the act of administering the medications caused him injury. He made no claim with respect to any effects or side effects of the medications, nor did he take issue with any of the defendant's other efforts to control his behavior, such as placing him in four point restraints.

[5] General Statutes § 52-549u provides for nonbinding arbitration in "any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. . . ."

[6] General Statutes § 17a-543 (b) provides in relevant part: "Notwithstanding the provisions of [§ 17a-543 (a)], if obtaining the consent provided for in this section would cause a medically harmful delay to a voluntary or involuntary patient whose condition is of an extremely critical nature, as determined by personal observation by a physician or the senior clinician on duty, emergency treatment may be provided without consent."

the eve of trial and to dismiss the action on the ground that the plaintiff could not support his claims with expert testimony. The defendant argued that the plaintiff needed expert testimony to establish that the defendant had violated § 17a-543 (a) by medicating him without his informed consent. The defendant further argued that because the case was scheduled for trial the following week, it would be unduly prejudicial to permit the plaintiff to call a previously undisclosed expert to testify at trial.

In his brief in opposition, the plaintiff conceded that he did not intend to call any expert witnesses but asserted that he did not need an expert to prove his prima facie case—that medication was administered to him without his consent. The plaintiff further asserted that the defendant would be unable to rely on the emergency provision of § 17a-543 (b) because that provision constitutes an affirmative defense, and the defendant had failed to plead that defense in its answer.

Although the defendant disagreed that the emergency provision of § 17a-543 (b) should have been specially pleaded as an affirmative defense, it nevertheless requested leave to amend its answer to assert that defense. The plaintiff objected to the request, arguing that the proposed amendment would "completely change the nature of this litigation . . . result in a substantial delay of the trial [and] require substantial otherwise unnecessary discovery . . . ." The plaintiff made that argument despite the fact that for the three years that the case had been pending, the defendant steadfastly had maintained the applicability of that provision, most notably during previous arbitration proceedings.[7]

Trial took place in March, 2004. At the outset, the court addressed the yet unresolved motion to preclude

---

[7] It is notable that the plaintiff neither sought additional discovery, as to which he claimed a "substantial" amount would be necessary, nor did he move to continue the trial date.

and for dismissal filed by the defendant. The court first determined that because the plaintiff did not intend to call any expert witnesses at trial, the defendant's motion to preclude was moot. The court also concluded that because the plaintiff had no expert witnesses to support his claims, the resolution of the motion to dismiss hinged on which party bore the burden of establishing that the emergency provision of § 17a-543 (b) applied. Although it appears that a ruling was never issued on the motion to dismiss, the court did conclude that the burden of proof was different for each of the plaintiff's claims.

With respect to the first count of the complaint, which alleged a statutory violation, the court determined that the defendant bore the burden of proving that its actions fell within § 17a-543 (b).[8] As to the second count, which alleged assault and battery, the court determined that the plaintiff bore the burden of proving that the unwanted touching was unlawful, which entailed proving that the defendant was not justified in medicating him.

The court also granted, in part, the defendant's motion in limine, prohibiting the plaintiff from presenting evidence of any injuries other than those disclosed in his discovery responses, namely, rage, headaches, nightmares, emotional distress and posttraumatic stress disorder. The court postponed ruling on the second part of the motion in limine, pertaining to the plaintiff's qualifications to testify that his injuries were proximately caused by the defendant's forced administration of medication, electing instead to

---

[8] In so ruling, the court cited *Hartford Hospital* v. *Dept. of Consumer Protection*, 243 Conn. 709, 715–16, 707 A.2d 713 (1998), and *Conservation Commission* v. *Price*, 193 Conn. 414, 424, 479 A.2d 187 (1984) ("those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established").

address any individual objections as they might arise during the trial.

At trial, the plaintiff was the sole witness in support of his case. His testimony consisted mainly of a disjointed stream of consciousness that jumped inexplicably from topic to topic, including his religious beliefs, illogical dreams he had been having, various ill-defined injustices done to him throughout his life and his struggle to stay in school. During his confused discourse, the plaintiff did not testify that the injuries he disclosed during discovery were caused by the defendant's administering him medication without his consent.

At the close of the plaintiff's testimony, the defendant moved for a directed verdict. With respect to both counts, the defendant argued that the plaintiff had failed to prove that any of his alleged injuries were caused by the defendant's forced administration of medication on May 5, 1998. The court thoughtfully considered the defendant's motion and questioned the plaintiff's counsel at length about the evidence related to causation. The court inquired: "[W]here is the evidence that that act, unconsented to medicating, caused him any problems whatsoever for which, it would seem to me, that there had to be some kind of a causal connection and evidence to support that?" The plaintiff's counsel responded that "[the plaintiff] has eloquently described his injuries on the [witness] stand. And then it's up to a jury to decide." The court persisted in its inquiry, and the discussion continued as follows:

"The Court: When you asked him about his injuries, he said that his self-esteem had been damaged in some way. I don't know exactly how. He said he started school and apparently discontinued that. That he's trying to get his life together. He used the expression deep stress. I don't know exactly what that means. He has dreams that don't seem to relate in a logical way. He says his

religious beliefs cause him to feel that medicines don't heal anything and that it's God who heals. He says [that] psychologically, he feels a lot of damages. I don't know what that means. . . . [W]hat was there about the administration of the medicine that caused his dreams to go awry?

"[The Plaintiff's Counsel]: I can't answer that question.

"The Court: Well, don't you think somebody ought to supply us with the evidence that this is a reasonably probable result of the administration of the drugs? I didn't hear any evidence that it was a painful experience, that the arm was damaged in any way. I heard no evidence that there was any physical damage which could have precipitated or caused, in terms of reasonable probability, a, you know, lessening of self-esteem. I don't follow that. Or that any experience of deep stress, or that, as I've already mentioned, the situation with respect to dreams or the situation with respect to his religious beliefs. I mean, what does that have to do with this? . . .

"[The Plaintiff's Counsel]: Your Honor, the jury can figure that out. . . .

"The Court: And what I'm saying to you is, where is the evidence that that experience, assuming that the jury finds it to have been wrongful, okay, under the circumstances, I mean, where is the evidence that that act triggers all these things? . . .

"[The Plaintiff's Counsel]: [The plaintiff] testified to what happened to him after the act."

At the conclusion of that colloquy, the court took a recess to further consider the motion and, when it returned, granted the motion. The court stated: "The evidence with respect to the injury is so vague that, in the opinion of the court, it could not reasonably lead

to any conclusion by the jury as to the nature thereof. Further, there was no evidence offered that the fact of the unconsented to medication, itself, caused any injury or problem psychologically or physical in nature. . . . [T]he requirement with respect to causation is an integral part of a case of this nature. And absent satisfying the burden with respect to that requirement, a plaintiff cannot prevail. . . . I'm satisfied that I have no choice in this particular instance but to direct a verdict for the defendant."

A few weeks later, on March 31, 2004, the court issued a memorandum of decision, reiterating that the "plaintiff's evidence did not as a matter of law provide a causal connection between the defendant's act and emotional difficulties alleged to have been caused thereby. Where the state of the evidence is such that a proper verdict could only be rendered in one way, it is the duty of the court to direct a verdict." From that determination, the plaintiff appealed.

The sole issue on appeal is whether the court properly concluded that the plaintiff failed to present sufficient evidence that the defendant's forced administration of medication caused his alleged injuries and, on that basis, directed the verdict as to the statutory negligence count.[9]

Our standard of review for challenges to directed verdicts is well settled. "Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when

---

[9] Although the court directed the verdict on the entire complaint, including the claim of assault and battery, and despite the fact that the appeal form indicates that the plaintiff's appeal is from the directed verdict in its entirety, the plaintiff's brief makes no reference to the assault and battery claim, nor does it develop any legal arguments with respect thereto. When the appellant fails to brief an issue, we deem it abandoned. *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 518 n.1, 865 A.2d 1231 (2005).

the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Silano* v. *Cumberland Farms, Inc.*, 85 Conn. App. 450, 452–53, 857 A.2d 439 (2004).

"In order to predicate a recovery on the ground of statutory negligence, two elements must coexist. . . . [T]he violation of the statute must constitute a breach of duty owed to the plaintiff. . . . Second, a plaintiff must prove that the violation of the statute . . . was a proximate cause of his injuries." (Internal quotation marks omitted.) *Blancato* v. *Randino*, 33 Conn. App. 44, 48, 632 A.2d 1144, cert. denied, 228 Conn. 916, 636 A.2d 846 (1993).

After reviewing the plaintiff's testimony, which was the only evidence presented at trial as to his injuries, we conclude that the court properly determined that the plaintiff failed to satisfy his burden of proving causation. The plaintiff's confused, often incomprehensible testimony failed to establish the necessary causal connection between the injuries he allegedly suffered and the defendant's act of forcibly medicating him. Although the plaintiff did testify that he suffered from low self-esteem, strange dreams and psychological "damage," he failed to connect those adequately with the defendant's actions.

Furthermore, the plaintiff had a twenty year history of mental illness, during which time he was hospitalized and medicated, both voluntarily and involuntarily, on a number of occasions. The plaintiff himself testified that he had been forcibly administered medication at

other hospitals and institutions on at least six occasions in the past. The plaintiff failed to establish that the defendant's actions, and not some element of his mental illness or previous treatment and forced medication, caused his injuries. On the basis of the plaintiff's failure to establish causation, we conclude that the court properly directed a verdict in the defendant's favor as to the statutory negligence claim.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The plaintiff argues that he is at least entitled to nominal damages because he established liability for a statutory violation. "Nominal damages are recoverable where there is a breach of a legal duty or the invasion of a legal right and no actual damages result or where, as here, such damages are not proven. See 22 Am. Jur. 2d, Damages § 15 (2003)." *Wasko* v. *Manella,* 87 Conn. App. 390, 400 n.8, 865 A.2d 1223 (2005). Nominal damages cannot be awarded, however, unless liability has first been established. *Riccio* v. *Abate,* 176 Conn. 415, 420, 407 A.2d 1005 (1979). Our review of the relevant portions of the transcript and record reveals that the court never found that the plaintiff had proved a breach of a legal duty or violation of a statute. In directing the verdict on the ground that the plaintiff had failed to establish causation, the court merely assumed for the sake of argument that the plaintiff had made out his prima facie case as to both counts. Absent a finding that the defendant breached any legal duty or violated any statute, the plaintiff is not entitled to nominal damages.