ANDREA WILSON *v.* WILHELMINA JEFFERSON
(AC 25910)

Flynn, C. J., and McLachlan and Pellegrino, Js.

Argued April 27—officially released October 17, 2006

*Richard H. G. Cunningham*, for the appellant (plaintiff).

*Donald F. Reid*, for the appellee (defendant).

*Opinion*

FLYNN, C. J. The plaintiff, Andrea Wilson, appeals from the judgment of the trial court rendered following

the granting of a motion for a directed verdict in favor of the defendant, Wilhelmina Jefferson, on the plaintiff's amended complaint.[1] The plaintiff initiated the present action in Superior Court after the defendant, her landlord, was unsuccessful in a summary process action against her. On appeal, the plaintiff claims that the court improperly directed a verdict in favor of the defendant on all counts of her amended complaint. We affirm the judgment of the trial court.

The following facts are relevant to the plaintiff's claims on appeal. The plaintiff entered into a lease with the defendant for the second floor apartment at 8 Hanford Place in Norwalk (apartment) on July 1, 1995.[2] The relationship between the plaintiff and the defendant quickly became acrimonious as a result of numerous disagreements between them regarding their respective duties as tenant and landlord. In June, 1996, the defendant sent the plaintiff a letter notifying her that she planned to terminate her lease on July 31, 1996. On June 20, 1996, the defendant received notice of certain housing violations from the department of health of the city of Norwalk. Over the course of the next two years, the defendant attempted to initiate a successful summary process action against the plaintiff on four separate occasions. The first three actions either were dismissed or withdrawn because of procedural defects.

The fourth and final summary process action was filed on October 22, 1997, but a decision in that action was not forthcoming until February 25, 2002. In the

---

[1] The amended complaint originally contained nineteen counts. Counts eighteen and nineteen specifically were withdrawn prior to the court's ruling on the defendant's motion for a directed verdict. This appeal, therefore, concerns the remaining seventeen counts.

[2] The plaintiff was a recipient of a rent subsidy under the housing assistance program administered by the Department of Housing and Urban Development pursuant to § 8 of the National Housing Act, as amended in 1974 and codified at 42 U.S.C. § 1437f.

final summary process action, the defendant had sought to evict the plaintiff on the bases that the apartment was needed for family use and that the lease had expired. The plaintiff asserted retaliatory eviction as a special defense pursuant to General Statutes § 47a-20.[3] The housing court found that the defendant had received notice of housing code violations within six months of the eviction proceeding.[4] It concluded, therefore, that the plaintiff successfully had asserted her special defense, establishing a presumption of retaliatory eviction, and that the defendant had failed to demonstrate a reason for evicting the plaintiff that was

[3] General Statutes § 47a-20, which is entitled "Retaliatory action by landlord prohibited," provides: "A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit, demand an increase in rent from the tenant, or decrease the services to which the tenant has been entitled within six months after: (1) The tenant has in good faith attempted to remedy by any lawful means, including contacting officials of the state or of any town, city or borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) the tenant has in good faith requested the landlord to make repairs; (4) the tenant has in good faith instituted an action under subsections (a) to (i), inclusive, of section 47a-14h; or (5) the tenant has organized or become a member of a tenants' union."

[4] A review of the housing court's decision leaves us somewhat perplexed. In concluding that Wilson successfully had sustained her burden with respect to the special defense of retaliatory eviction, the court found that such burden was met by Wilson's introduction into evidence of "exhibit fourteen, which is a notice entitled notice of violation of unsafe building, wherein the communication for exhibit fourteen indicated the structure was unsafe. Exhibit fourteen was dated October 27, 1997, certainly within six months of these eviction proceedings." What is perplexing about this conclusion is that the court also specifically found that Jefferson had served Wilson with a notice to quit on September 10, 1997, and a summary process complaint on October 11, 1997. This would mean that the document found by the court to have established Wilson's special defense of retaliatory eviction was dated one and one-half months *after* the notice to quit had been served and more than two weeks *after* the summary process complaint had been served. We are unable to fathom how exhibit fourteen could have established a retalia-

sufficient to rebut that presumption.[5] The housing court rendered judgment for the plaintiff accordingly. Although the housing court found in favor of the plaintiff, it noted that it did not believe the defendant to have been uncooperative in any way, and it found both parties to be good and decent people.

Following the plaintiff's success in the summary process action, she remained a tenant of the defendant, and she brought this civil action. In counts one through four of the amended complaint, the plaintiff asserted claims for damages for retaliatory eviction pursuant to § 47a-20. In counts five through eight, the plaintiff set forth claims for intentional infliction of emotional distress, and in count nine, a claim for negligent infliction of emotional distress. Count ten asserted a claim for abuse of process. In count eleven, the plaintiff alleged a claim for a violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), based on the defendant's repeated attempts at eviction. In count twelve, the plaintiff alleged that

tory eviction when it was dated well *after* Jefferson started the final summary process procedures.

[5] General Statutes § 47a-20a enumerates four bases by which a landlord may overcome the presumption of retaliatory eviction. It provides in relevant part: "Actions deemed not retaliatory. (a) Notwithstanding the provisions of section 47a-20, the landlord may maintain an action to recover possession of the dwelling unit if: (1) The tenant is using the dwelling unit for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent; (2) the landlord seeks in good faith to recover possession of the dwelling unit for immediate use as his own abode; (3) the condition complained of was caused by the wilful actions of the tenant or another person in his household or a person on the premises with his consent; or (4) the landlord seeks to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant before the tenant's complaint."

In the summary process action, to rebut the presumption of retaliatory eviction, the defendant asserted that she wanted to recover possession of the apartment for family use. See General Statutes § 47a-20a (2). The housing court concluded, however, that the defendant had not met her burden of proving family use by a fair preponderance of the evidence.

the defendant had violated General Statutes § 47a-21 (h) by failing to keep her security deposit in an escrow account, and, in count thirteen, she asserted a second claim under CUTPA based on an alleged violation of § 47a-21 (h). Finally, in counts fourteen through seventeen, the plaintiff set forth causes of action for retaliatory eviction on the basis of General Statutes § 47a-33.[6]

A jury trial was commenced whereupon both sides presented their case to the jury. After both sides rested, the defendant moved for a directed verdict on all remaining counts of the plaintiff's complaint, to which the plaintiff objected. The court granted the defendant's motion in a lengthy oral opinion, and it instructed the jury to direct a verdict in favor of the defendant on all remaining counts of the complaint, which it did. The plaintiff later moved to set aside the verdict, and the court thoroughly readdressed the merits of the directed verdict, affirmed its earlier decision and denied the plaintiff's motion. The plaintiff now appeals.

Prior to addressing the propriety of the court's decision directing a verdict in favor of the defendant on all counts, we set forth the applicable standard of review that this court employs when determining whether the trial court properly directed a verdict. "We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set

---

[6] General Statutes § 47a-33 provides in relevant part: "In any action for summary process . . . it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city, borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any of the provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie. . . ."

aside a verdict rendered for the other party." (Citations omitted; internal quotation marks omitted.) *McCann Real Equities XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 490, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). "A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Beale* v. *Yale-New Haven Hospital*, 89 Conn. App. 556, 566, 874 A.2d 259 (2005).

I

We first address the plaintiff's claims that the court improperly directed a verdict in favor of the defendant on counts one through four of her complaint, which alleged claims for damages based on each of the defendant's individual attempts to evict the plaintiff allegedly in violation of § 47a-20, and counts fourteen through seventeen, which alleged claims for damages based on each of the defendant's individual attempts to evict the plaintiff, allegedly in violation of § 47a-33. The court directed a verdict in favor of the defendant with respect to all of these counts, holding that neither statutory provision created a private cause of action for damages. On appeal, the plaintiff claims that the court's ruling was improper. We disagree. Additionally, we note that during trial, specifically on July 1, 2004, the plaintiff's counsel clearly agreed that counts fourteen through seventeen failed to state a cause of action. Accordingly, we do not address those counts in our analysis.

Although the court acted pursuant to the defendant's motion for a directed verdict, its rulings with respect to counts one through four specifically address the legal sufficiency of the complaint, and the court concluded as a matter of law that § 47a-20 does not afford a private cause of action. The plaintiff's claim "with respect to § 47a-20a present[s] an issue of statutory construction.

Statutory construction is a question of law and, therefore, our review is plenary. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Correa* v. *Ward*, 91 Conn. App. 142, 146, 881 A.2d 393 (2005).

The plaintiff claims that the court improperly ruled that § 47a-20 does not provide a private cause of action for damages. We disagree.

Section 47a-20 provides in relevant part that a landlord "shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit . . . within six months after (2) any municipal agency or official has filed a notice, complaint or order regarding . . . a violation [of provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie] . . . ." See footnote 3. The text of § 47a-20 makes no mention of any right of a tenant to maintain an action for damages or other relief in the event that the landlord violates the terms of the provision. Indeed, our appellate case law consistently has construed § 47a-20 as creating only a *rebuttable presumption* of retaliatory eviction that arises when a landlord institutes a summary process action within six months of certain complaints or orders as enumerated in the statute. See *Visco* v. *Cody*, 16 Conn. App. 444, 450 n.7, 547 A.2d 935 (1988) ("[section] 47a-20 establishes retaliation as a presumption, if a summary process action is initiated within six months of a complaint,

which the landlord must then successfully rebut"); *Correa* v. *Ward*, supra, 91 Conn. App. 146–47 (concluding that enumerated grounds set forth in § 47a-20a are sole means of rebutting presumption of retaliation created by § 47a-20). Numerous Superior Court decisions also have interpreted the language of § 47a-20 to establish a restriction on a landlord's remedies, thereby construing the statute as a shield for the tenant, rather than a sword. See, e.g., *Alteri* v. *Layton*, 35 Conn. Sup. 261, 264, 408 A.2d 18 (1979) ("[u]nder § 47a-20 . . . the retaliatory eviction defense is not a right given to tenants, but rather a limitation upon the remedies of the landlord").

The plaintiff argues that, despite the absence of any language in § 47a-20 indicating a private cause of action for tenants, to give full effect to the purpose of § 47a-20, this court should imply a cause of action. This we decline to do.

The party seeking to invoke an implied right of action bears the burden of demonstrating that such an action is created implicitly in the statute. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, 277 Conn. 238, 246, 890 A.2d 522 (2006). The plaintiff has not met this burden. "In order to overcome the presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute, the [plaintiff] must demonstrate that, in applying the three part test [our Supreme Court] established in *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, [238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)] no factor weighs against affording an implied right of action and the balance of factors weighs in their favor. Under that test, we examine: First, [whether] the plaintiff [is] one of the class for whose . . . benefit the statute was enacted . . . . Second, [whether there is] any indication of legislative intent, explicit or implicit, either to

create such a remedy or to deny one . . . . Third, [whether it is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff . . . ." (Internal quotation marks omitted.) *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 246–47. "[T]he amount and persuasiveness of evidence supporting each factor may vary, and the court must consider all evidence that could bear on each factor. It bears repeating, however, that the plaintiffs must meet the threshold showing that none of the three factors weighs against recognizing a private right of action." Id., 248.

We note that because § 47a-20 is silent with respect to whether it confers a private right of action, our analysis of the plaintiff's argument is not limited by General Statutes § 1-2z. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 268. Accordingly, we apply "our well established process of statutory interpretation, under which we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 372, 880 A.2d 138 (2005).

We conclude with respect to the second *Napoletano* factor that the plaintiff has failed to demonstrate that the legislature intended to create a private cause of action through the enactment of § 47a-20. To the contrary, the legislative history indicates that in enacting § 47a-20, lawmakers did not intend to create a cause

of action for damages. Section 47a-20 was enacted pursuant to a 1971 public act entitled "An Act Prohibiting Retaliatory Rent Increases and Evictions." Public Acts 1971, No. 71-852. Senator Wilber G. Smith introduced the legislation and explained: "[T]he purpose of the bill . . . simply [is] to prohibit retaliatory rent increases and evictions solely because persons exercise their rights . . . presently given them under law, to file complaints with the State or local municipalities . . . [to prevent] Housing Code violations and to protect [tenants] and to allow them to use [this law] as defense from being evicted . . . ." 14 S. Proc., Pt. 7, 1971 Sess., pp. 3034–35. The public act, as originally proposed, included a subsection four, which provided a cause of action for a tenant who was evicted as retaliation whereby the tenant would be entitled to triple damages and attorney's fees.[7] The act subsequently was amended to delete subsection four in its entirety. Senator Smith explained the purpose of the amendment, remarking: "Section 4 is completely deleted because of the fact that, points were well made that, no tenant . . . should be entitled to recover damages when [no one] knows how far this individual may or may not move. . . . [T]he bill, as amended, will still, in the intent, meet the [tenant's] needs." Id. Thus, as the recorded legislative history makes clear, the legislature expressly considered providing a private cause of action for damages based on retaliatory eviction, but then rejected that option, confident that the intent of the section, to prohibit retaliatory evictions and rent increases, would be accomplished without such a cause of action.

An examination of the relationship between § 47a-20 and other provisions of the Landlord Tenant Act, General Statutes § 47a-1 et seq., also is revealing. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King,*

---

[7] Specifically, proposed subsection four stated: "Any tenant from whom possession has been recovered or who has been otherwise involuntarily dispossessed in violation of any provision of this act, shall be entitled to

158

supra, 277 Conn. 255. The placement of § 47a-20 among the provisions of the Landlord Tenant Act addressing the rights and responsibilities of landlords indicates that the provision sought only to limit landlords' rights. Similarly, the title of the provision, "Retaliatory Action by Landlord Prohibited," strongly evidences that the legislature intended § 47a-20 to act only as a limit to a landlord's rights of summary process and rent collection.

Although the plaintiff argues that a cause of action for retaliatory eviction should be implied from the statutory framework of General Statutes §§ 47a-14h and 47a-20, her brief provides little substantive argument or analysis in support of this position. The plaintiff refers to the language of § 47a-14h[8] and argues that it alludes to a cause of action pursuant to § 47a-20. Although § 47a-14h makes reference to § 47a-20, we do not agree with the plaintiff's argument that the references indicate an intention on the part of the legislature to recognize a separate private cause of action for damages or other relief on the basis of an alleged retaliatory eviction.

recover triple damages based on the actual damages sustained to him, including all costs of locating a new dwelling, moving expenses, and reasonable attorney's fees associated with such an action."

[8] General Statutes § 47a-14h (a) provides in relevant part: "Any tenant who claims that his landlord has failed to perform his legal duties, as required by section 47a-7 or subdivisions (1) to (13), inclusive, of subsection (a) of section 21-82, may institute an action in the *superior court having jurisdiction over housing matters* in the judicial district in which he resides *to obtain the relief authorized by this section and sections 47a-20* and 47a-68. . . ." (Emphasis added.) Section 47a-14h provides a cause of action for a tenant to enforce her rights as tenant and to compel a landlord to perform her legal duties. See *Dugan* v. *Milledge*, 196 Conn. 591, 594, 494 A.2d 1203 (1985). It permits a tenant who has complied with certain jurisdictional requirements to bring an action to compel her landlord to comply with the requirements of General Statutes § 47a-7. General Statutes § 47a-14h (k) provides: "The judges of the superior court may, in accordance with the provisions of section 51-14, adopt rules for actions brought under this section and sections *47a-20* and 47a-68, including the promulgation of a simplified form for bringing such actions." (Emphasis added.)

The plaintiff has failed to cite any legislative history in support of such a position.[9] Because it is the plaintiff's burden to demonstrate to this court that none of the *Napoletano* factors weighs against an implied cause of action, we decline to partake in further analysis. "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs."[10] (Internal quotation marks omitted.) *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005).

We conclude, accordingly, that the court properly directed a verdict with respect to counts one through four of the amended complaint.

## II

The plaintiff next claims that the court improperly directed a verdict in favor of the defendant with respect to counts five through eight of the amended complaint, each alleging a claim of intentional infliction of emotional distress, one count for each summary process action filed by the defendant. We conclude that the court properly directed the verdict.

In order to prevail in a case for liability under a theory of intentional infliction of emotional distress,

---

[9] We note, however, that according to the act's legislative history, § 47a-14h is procedural in nature and is designed to balance the competing interests of tenants and landlords by both providing a simple method by which an individual tenant may enforce housing code violations and also protecting a landlord's interest in collecting rent by requiring a tenant who initiates such an action to deposit rent with the clerk of the court during the action's pendency.

[10] We note also that in *Stangle* v. *Sullivan Trust*, Superior Court, judicial district of Hartford, Docket No. CV-02-0815108-S (August 18, 2002) (33 Conn. L. Rptr. 31), the plaintiff argued that a common law cause of action for retaliatory eviction could be inferred from the strong policy against retaliatory evictions in Connecticut, evidenced by General Statutes §§ 47a-20 and 47a-33. The court, *Koletsky, J.*, declined to recognize such a private cause of action.

the plaintiff must plead and prove four elements. "It must be shown: (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Internal quotation marks omitted.) *Bombalicki* v. *Pastore*, 71 Conn. App. 835, 840, 804 A.2d 856 (2002). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) *Muniz* v. *Kravis*, 59 Conn. App. 704, 712, 757 A.2d 1207 (2000). "[I]t is the intent to cause injury that is the gravamen of the tort . . . ." (Citations omitted; internal quotation marks omitted.) *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 708, 746 A.2d 184, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000). On appeal, the plaintiff argues that the evidence demonstrated that "the defendant knew . . . that an eviction action would . . . be emotionally injurious to anyone . . . [that] outrageousness is demonstrated . . . by [the defendant's] constant violations of state law . . . [and that] the severity of the emotional stress and suffering of the [plaintiff] is clear from the testimony." Additionally, she argues that her pleadings as to these counts also were sufficient. In directing a verdict on these counts, the court concluded that the evidence was insufficient to prove that the defendant

intended to cause emotional injury to the plaintiff.[11] The court explained that knowing that something would cause emotional injury and intending to cause such injury are two different things, and there was no evidence that the defendant *intended* to cause emotional injury. Although we affirm the judgment of the court directing a verdict on these counts, we do so on the ground that there was no evidence, nor even an allegation in the pleadings, that the conduct of the defendant was extreme and outrageous.[12]

We previously have concluded: "The act of filing a lawsuit, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior or make the average member of the community raise their hand and exclaim, 'Outrageous!' " *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 371, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Here, the only conduct of the defendant on which the plaintiff based her claims of intentional infliction of emotional distress was the defendant's individual attempts to initiate a summary process proceeding against her. Under these facts, the plaintiff cannot demonstrate, nor did she demonstrate during trial, extreme and outrageous conduct as is required to establish a prima facie case of intentional infliction of emotional distress. Accordingly, we conclude that the court properly directed the verdict on these counts.

III

The plaintiff next claims that the court improperly directed a verdict with respect to count nine, her claim

[11] The court did not consider the other elements of the claims, having found insufficient evidence on the first element.

[12] "[I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 768 n.13, 890 A.2d 645 (2006).

of negligent infliction of emotional distress.[13] The plaintiff argues that the conduct of the defendant in wrongly bringing repeated summary process actions created an unreasonable risk of causing the plaintiff emotional distress and that the evidence showed that the plaintiff suffered physical symptoms as a result of that conduct. We conclude that the court properly directed a verdict on this count.

"[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . . This . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If such [distress] were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the [distress] were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 410, 876 A.2d 522 (2005).

As with her claims for intentional infliction of emotional distress, the plaintiff's claim for negligent infliction of emotional distress was based solely on the

[13] The court granted the defendant's motion for a directed verdict with respect to the plaintiff's claim of negligent infliction of emotional distress on the ground that the plaintiff had failed to prove *intent*. Intent, however, is not an element of the tort of negligent infliction of emotional distress. Nevertheless, "[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 768 n.13, 890 A.2d 645 (2006).

defendant's repeated attempts to initiate a successful summary process action against her. Even assuming that it was the defendant's negligence that led to the initiation of four summary process proceedings, we cannot say that such conduct was unreasonable in that it was foreseeable that the plaintiff *reasonably* would suffer severe emotional distress beyond that normally associated with litigation. The plaintiff specifically pleaded in paragraph four of the ninth count of her amended complaint that it was the defendant's "repeated actions to evict the plaintiff [which constituted] a pattern of harassment with the knowledge that such actions would cause substantial mental pain, suffering and anguish on the part of the plaintiff, or a reckless disregard that such harm would occur, or negligently took such actions." We note that in the history of our summary process law, technicalities often have resulted in the dismissal of such actions one or more times before a landlord has been successful in recovering possession of the premises.

In this case, there was no evidence that the repeated attempts to evict the plaintiff constituted a pattern of harassment such that would create an unreasonable risk of causing the plaintiff emotional injury. Further, just as the defendant's use of legal process to enforce her rights as landlord, without more, does not constitute extreme and outrageous behavior, it also cannot be considered unreasonable conduct in this context. See *Ancona* v. *Manafort Bros., Inc.,* supra, 56 Conn. App. 713 (upholding trial court's determination that plaintiff's failure to show that defendant should have anticipated that prosecuting its claim would cause plaintiff emotional distress beyond that normally associated with litigation was fatal to claim of negligent infliction of emotional distress). We conclude, therefore, that the court's ruling with respect to count nine was proper.

IV

We next address the plaintiff's claim that the court improperly directed a verdict in favor of the defendant as to count ten of the amended complaint, which set forth a claim for abuse of process. We do not agree.

The entire argument and analysis provided by the plaintiff in her appellate brief provides: "In the instant case, we have the bringing of four eviction actions, which, because of their violations of § 47a-20, could bring about no purpose other than the harassment of the plaintiff. Hence, they constitute, or at least a jury could conclude that they constitute, an abuse of process. The malice on the part of the defendant is demonstrated even in the instant case with her special defenses and counterclaims."[14] "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . . Comment b to § 682

---

[14] We also note that in count ten of her amended complaint, the plaintiff alleged in relevant part: "The defendant brought four actions against the plaintiff in the period of 1996 to 1997, each action separately constituting an abuse of legal process as brought without legal right." The plaintiff then alleged that these actions caused her mental suffering. Despite her argument on appeal, nowhere in count ten did the plaintiff allege a violation of General Statutes § 47a-20 or that each attempted proceeding was in retaliation for her complaints to the authorities. Rather, the complaint simply alleged that the actions were "without legal right." We conclude that the complaint failed to set forth a prima facie case for abuse of process. Accordingly, judgment could not have been rendered in favor of the plaintiff on the complaint. See *Verraster* v. *Tynan*, 152 Conn. 645, 648, 211 A.2d 150 (1965) ("any judgment, to be adequate as such, must conform to the pleadings, the issues and the prayers for relief").

explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. See also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Honan* v. *Dimyan*, 52 Conn. App. 123, 130, 726 A.2d 613, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999)

A thorough review of the record indicates that the plaintiff failed to present any evidence at trial indicating that the attempts by the defendant to institute summary process proceedings were for any purpose other than those for which they were intended, to evict a tenant from an apartment. In directing a verdict on this count, the court found that the evidence tended to show that the defendant sought to evict the plaintiff because she wanted possession of the apartment. Chapter 832 of our General Statutes, concerning summary process, was designed by the legislature for just this purpose—to enable a landlord to recover possession of a rental unit. See General Statutes § 47a-23 (a) et seq. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enables a landlord to obtain possession of leased premises without the delay associated with common-law actions." (Internal quotation marks omitted.) *Rock Rimmon Grange # 142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 413, 885 A.2d 768 (2005).

Accordingly, we conclude that the court's direction of a verdict in favor of the defendant with respect to count ten was proper.

V

The plaintiff next challenges the court's decision directing a verdict in favor of the defendant with respect

.to count eleven of her amended complaint, in which she alleged that the defendant's repeated attempts to evict her amounted to a violation of CUTPA. We decline to review this claim.

Count eleven of the amended complaint alleged in relevant part: "In the conduct of her business of renting out apartments, the defendant brought repeated actions to evict the plaintiff in disregard of Connecticut law and with the intent of [injuring] the plaintiff, and specifically in doing so, violated [CUTPA]." The court directed a verdict on the basis of the plaintiff's failure to plead with sufficiency the specific public policy on which she was basing this CUTPA claim.

On appeal, the plaintiff states in her brief that CUTPA has been applied in the landlord-tenant context. She then provides, in toto, the following analysis: CUTPA "applies in the instant case [because of] public policy and the outrageous conduct in the actions of the defendant. The defendant has claimed that there was no misconduct pleaded although clearly, the pleading *does* indicate outrageous conduct—actions in violation of Connecticut law in prosecuting the eviction actions. The defendant admitted, through her attorney, that she was in the business of renting apartments. . . . This count should have gone to the jury at least so far as monetary losses and also on the emotional injuries." (Citation omitted; emphasis in original.) No legal analysis, legal citation or direction to the evidence in support of a CUPTA claim are presented to this court in the plaintiff's brief. Accordingly, we decline to review this claim. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims."

(Citation omitted; internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005).

## VI

The plaintiff claims next that the court improperly directed a verdict in favor of the defendant with respect to counts twelve and thirteen, which set forth claims based on the defendant's failure to maintain the plaintiff's $900 security deposit in an escrow account as required by § 47a-21. We decline to review this claim.

Not only has the plaintiff failed to brief these issues adequately,[15] but the plaintiff's counsel conceded, before the trial court, that these counts did not state a cause of action because they were premature. Accordingly, we decline to review this claim on appeal. See id., 130–31.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] The entire briefing of these claims provides: "The court erred in directing a verdict on the twelfth count for . . . violations of [General Statutes §] 47a-21 and the thirteenth count as [a] CUPTA violation: *Standard of Review: The* standard of review is essentially the same as for the other counts. The issue is a determination of damages. *Application of Standard to the Facts of the Case:* As indicated in the Statement of Facts, the defendant placed the security deposit of the plaintiff in an account in her name and her husband's name and in which they also kept their own funds. This created a risk to the funds. The plaintiff leaves it to the court as to whether this should have gone to the jury for at least nominal damages."