LINDA ZANESKI, ADMINISTRATRIX (ESTATE
OF MICHAEL P. ZANESKI) *v.*
THIRSTY TURTLE ET AL.
(AC 31893)

DiPentima, C. J., and Bishop and Schaller, Js.

Argued March 15—officially released May 24, 2011

*Donald Gaudreau,* for the appellant (plaintiff).

*Jan C. Trendowski,* with whom, on the brief, was *Mirza Refai Arefin,* certified legal intern, for the appellees (defendants).

*Opinion*

BISHOP, J. In this action brought pursuant to General Statutes § 30-102,[1] the Dram Shop Act, the plaintiff, Linda Zaneski, in her capacity of administratrix of the estate of her son, Michael P. Zaneski, appeals from the judgment of the trial court setting aside the jury verdict and directing the jury to render a verdict in favor of the defendants, the Thirsty Turtle, a tavern, Club, LLC, its backer, and Donald G. Kelley, its permittee. On appeal, the plaintiff claims that the court improperly determined that she failed to prove that the defendants sold alcohol to an intoxicated person, namely, Cynthia Caceras, in violation of the Dram Shop Act. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 7:30 p.m. on March 18, 2005, Caceras met friends at the Thirsty Turtle in Stamford. She stayed there until just after midnight. While at the Thirsty Turtle, Caceras consumed between three and four beers. After leaving the Thirsty Turtle, she went to another bar nearby, but she did not further consume any alcohol while there. At approximately 1:45 a.m., after dropping her cousin off at her car, Caceras proceeded onto Interstate 95. When Caceras attempted to cross into the left lane of traffic, she struck a vehicle being operated by Michael Zaneski. Caceras and Michael Zaneski drove to the shoulder of the highway, exited their vehicles and exchanged information. As they were returning to their respective vehicles, a third vehicle struck Caceras' car, causing it to strike Michael Zaneski and pin him against the guardrail. Michael

[1] General Statutes § 30-102 provides in relevant part: "If any person, by such person or such person's agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of two hundred fifty thousand dollars . . . to be recovered in an action under this section . . . ."

Zaneski sustained severe injuries and was pronounced dead at the scene.

Trooper John Jackson of the state police spoke with Caceras at the scene of the accident at approximately 2:15 a.m. Although Jackson did not note anything unusual about Caceras' behavior at that time, he smelled alcohol on her breath and noted her bloodshot eyes when he later spoke to her at the hospital. Jackson indicated that Caceras had been crying and acknowledged that her crying could have caused or contributed to the redness of her eyes. Pursuant to routine police procedure concerning motor vehicle fatalities, Caceras was administered two tests to determine her blood alcohol content, one at 4:20 a.m. and the other at 5:20 a.m. Both tests indicated a blood alcohol content of 0.14.

At trial, Caceras testified that she had consumed three or four beers during the four to five hour period of time that she was at the Thirsty Turtle and that she had not had anything else to drink that night. She indicated that she did not feel intoxicated at any time during the evening, that she never slurred her speech and that she did not have any difficulty maintaining her balance. She testified that she did not, at any time, exhibit any signs of intoxication. There was no other evidence submitted to the jury regarding the condition or behavior of Caceras during the evening in question.

At the conclusion of evidence, the defendants moved for a directed verdict, on which the court reserved judgment pursuant to Practice Book § 16-37. On April 28, 2009, the jury returned a verdict in favor of the plaintiff in the amount of $1,028,200.31.[2] The defendants thereafter filed motions to set aside the verdict and for a directed verdict. The court granted the defendants' motions to set aside the verdict pursuant to Practice

---

[2] The verdict was reduced to $250,000 pursuant to the cap imposed by § 30-102.

Book § 16-35 and for a directed verdict, and rendered judgment in favor of the defendants. From that judgment, the plaintiff appeals.

"In reviewing a trial court's decision to set aside a jury verdict, we must consider the evidence in the light most favorable to the party who succeeded before the jury. . . . While an appellate court must give great weight to a trial court's decision to set aside a verdict, an appellate court must carefully review the jury's determinations and evidence, given the constitutional right of litigants to have the issues decided by a jury. Great weight should be given to the action of the trial court and the presumption is that a verdict is set aside only for good and sufficient reason. However, the record must support that presumption and indicate that the verdict demonstrates more than poor judgment on the part of the jury. . . .

"[The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Citation omitted; internal quotation marks omitted.) *Nuzzo* v. *Nathan*, 123 Conn. App. 114, 118–19, 1 A.3d 267 (2010).

Similarly, "[a] trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to grant the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions

and make reasonable inferences from the facts proven
. . . it may not resort to mere conjecture and specula-
tion. . . . A directed verdict is justified if . . . the evi-
dence is so weak that it would be proper for the court
to set aside a verdict rendered for the other party."
(Internal quotation marks omitted.) *Fisher* v. *Big Y
Foods, Inc.*, 298 Conn. 414, 440, 3 A.3d 919 (2010). "A
verdict may be directed where the decisive question is
one of law or where the claim is that there is insufficient
evidence to sustain a favorable verdict." (Internal quota-
tion marks omitted.) *Beale* v. *Yale-New Haven Hospital*,
89 Conn. App. 556, 566, 874 A.2d 259 (2005).

To prevail on a dram shop claim, a plaintiff must
prove: "(1) the sale of the alcoholic liquor; (2) that the
sale was to an intoxicated person; and (3) that the
intoxicated person caused injury to another's person
or property as a result of his or her intoxication." *Craig*
v. *Driscoll*, 262 Conn. 312, 328, 813 A.2d 1003 (2003).
Proof of sale to an intoxicated person requires proof
of "something more than to be merely under the influ-
ence of, or affected to some extent by, liquor. Intoxica-
tion means an abnormal mental or physical condition
due to the influence of intoxicating liquors, a visible
excitation of the passions and impairment of the judg-
ment, or a derangement or impairment of physical func-
tions and energies. When it is apparent that a person
is under the influence of liquor, when his manner is
unusual or abnormal and is reflected in his walk or
conversation, when his ordinary judgment or common
sense are disturbed or his usual will power temporarily
suspended, when these or similar symptoms result from
the use of liquor and are manifest, a person may be
found to be intoxicated. He need not be 'dead-drunk.'
It is enough if by the use of intoxicating liquor he is so
affected in his acts or conduct that the public or parties
coming in contact with him can readily see and know
this is so." *Sanders* v. *Officers Club of Connecticut*,

*Inc.*, 196 Conn. 341, 349–50, 493 A.2d 184 (1985). In *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 881 A.2d 428, cert. denied, 276 Conn. 915, 888 A.2d 84 (2005), a patron of the defendant tavern testified that he had been intoxicated on the night in question, but the plaintiff presented no evidence that the patron was *visibly* intoxicated while at the tavern. On that basis, this court concluded that the plaintiff failed to meet his burden of proof under *Sanders*. Id., 802.

Here, the plaintiff argues that Caceras' erratic operation of her motor vehicle was evidence of her intoxication while at the Thirsty Turtle. The accident, however, occurred approximately two hours after Caceras had left the defendant establishment, rendering the connection between her alleged erratic driving and her condition two hours earlier too tenuous to be probative. Similarly, Jackson's testimony that he smelled alcohol on Caceras' breath, that her eyes were bloodshot and that she had a blood alcohol content of 0.14 four to five hours after she left the Thirsty Turtle is not probative of the question of whether Caceras was visibly intoxicated when she was served by the defendants.[3] Indeed, as she must, the plaintiff concedes that there was no evidence before the jury that Caceras was intoxicated while she was at the Thirsty Turtle. The plaintiff argues only that the jury could deduce Caceras' intoxication while at the Thirsty Turtle from her driving behavior two hours after leaving the defendant establishment and from the results of a blood alcohol analysis taken several hours later. The plaintiff's argument, however, rests on speculation, an inadequate substitute for probative evidence. Because the jury could not reasonably have determined that the defendants served alcohol to an intoxicated person, the court did not abuse its discretion in setting

[3] There was no expert evidence presented to extrapolate the blood alcohol results back to the time that Caceras was served.

aside the verdict and directing a verdict in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.