STATE OF CONNECTICUT *v.* NICHOLAS RUSSO
(AC 25029)

Dranginis, Bishop and West, Js.

Argued February 23—officially released May 31, 2005

*Kim Coleman Waisonontz*, with whom, on the brief, was *Norman A. Pattis*, for the appellant (defendant).

*Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Nicholas Russo, appeals from the judgment of conviction, rendered following a jury trial, of six counts of obtaining a controlled substance by forgery of a prescription in violation of General Statutes § 21a-266 (a) (2). On appeal, the defendant claims that the trial court (1) improperly determined that the police did not alter his prescription records, (2) compromised his right not to testify by asking whether he intended to invoke the physician-patient privilege and (3) failed to conduct an adequate investigation of possible juror bias. We affirm the judgment of the trial court.

The defendant is a former detective with the Hartford police department. In 1996 and 1997, he consulted Santo Buccheri, a Hartford physician, who prescribed Tylenol with codeine No. 3 (Tylenol 3), a controlled substance. Lieutenant David Kenary, the defendant's supervisor, told Marcus Brown, an investigator with the federal Drug Enforcement Administration, that Buccheri was overprescribing controlled substances and keeping inadequate records. Kenary asked Brown to notify him

if Brown encountered the defendant's name when investigating Buccheri. Brown then visited five pharmacies near Buccheri's office and the defendant's home and requested the defendant's prescription records. The records indicated that the defendant had obtained 7000 to 8000 Tylenol 3 tablets, far in excess of the number that Buccheri had prescribed.

The state filed an information charging the defendant with thirty-two counts of obtaining a controlled substance by forgery of a prescription. The state charged that the defendant had traced Buccheri's signature on legitimate prescriptions to create forged prescriptions. The court granted the defendant's motion to suppress the prescription records that Brown had obtained from the pharmacies without a warrant or the defendant's consent. The court then granted the state's motions to dismiss the information and for permission to appeal. Our Supreme Court reversed the ruling on the motion to suppress and remanded the case for further proceedings. See *State* v. *Russo*, 259 Conn. 436, 790 A.2d 1132, cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002). The state then filed an amended substitute information charging the defendant with seven counts of obtaining a controlled substance by forgery of a prescription. The jury returned a verdict of guilty on six of the counts. Thereafter, the court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective term of two years incarceration, execution suspended, three years of probation and a $3000 fine. This appeal followed.

I

The defendant's first claim concerns the court's rulings on the prescription records. The defendant contends that the court improperly ruled out the possibility that his former police colleagues framed him in retalia-

tion for his testimony against several police officers in another case. Because six years had elapsed between the seizure of the records in 1997 and the trial in 2003, the defendant argues that the police had ample opportunity to alter the records to make it appear that he had forged prescriptions. The defendant claims that evidence regarding the chain of custody of the records was therefore critically important. In the defendant's view, the court (1) improperly foreclosed this argument by admitting the records, (2) incorrectly prevented him from offering testimony about the Hartford police department's evidence gathering and storage practices and (3) improperly instructed the jury on the chain of custody of the records. We disagree.

A

Because the same standard of review governs the admission of the records and the exclusion of the testimony regarding police evidentiary procedures, we consider them together. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Brisco*, 84 Conn. App. 120, 132, 852 A.2d 746, cert. denied, 271 Conn. 944, 861 A.2d 1178 (2004).

First, we examine the admission of the prescription records. The state presented a series of witnesses who worked at the pharmacies to which the defendant had taken his prescriptions. The witnesses testified that they had filled the prescriptions for the defendant and

processed them in the usual course of business by attaching labels or other pharmacy identification to them. Each time a witness authenticated one of the defendant's prescriptions, the defendant objected to the admission of the prescription on the ground of lack of proof of a chain of custody. The court overruled the objections and admitted the prescription records.

Because the witnesses were able to identify the prescriptions as having been submitted to their pharmacies by the defendant, the prescriptions were authenticated properly. "[A] proponent need not establish a chain of custody in order to authenticate a business record." *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 604, 717 A.2d 713 (1998). Proof of the chain of custody of the prescriptions was therefore not necessary to establish their admissibility. Furthermore, the defendant did not provide any evidence to support his theory that the police had tampered with the prescription records. "The defendant has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court's discretion in admitting the evidence." *State* v. *Green*, 55 Conn. App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438, cert. denied, 529 U.S. 1136, 120 S. Ct. 2019, 146 L. Ed. 2d 966 (2000). We therefore conclude that the court did not abuse its discretion in admitting the records.

Next, we examine the exclusion of the testimony concerning police evidentiary procedures. The defendant called Michael Perodeau, a detective with the Hartford police department, to testify about department procedures for collecting and storing evidence. The defendant also called Lieutenant Kenary to question him about general evidentiary practices. The court sustained the state's objections to this testimony on relevance grounds.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 679–80, 830 A.2d 193 (2003). We are not persuaded that the court abused its discretion in excluding testimony about general evidentiary procedures. Neither Perodeau nor Kenary was to testify about the circumstances of evidence gathering and storage in the defendant's case. Therefore, their testimony about general procedures would not have tended to support any relevant fact.

B

We now turn to the standard of review applicable to the jury instruction on the chain of custody of the prescription records. The defendant does not claim that the instruction involves a constitutional question. When a challenge to a jury instruction is not of constitutional magnitude, the "charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Morales*, 71 Conn. App. 790, 820, 804 A.2d 902, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002).

In closing argument to the jury, the defendant contended that the state had not proven that the chain of

custody of the records was unbroken and that the jury could find reasonable doubt on that basis. In response to the state's request for a curative instruction, the court instructed the jury that the chain of custody of the evidence was an issue for the court to consider in determining admissibility, not an element of the offense to be proven by the state. The court also instructed the jury that it nevertheless could consider whether the defendant had offered any evidence of tampering and, if so, to take that evidence into account in determining whether to find the defendant guilty. The defendant objected to the charge. The defendant argues that the charge directed the jury to give greater weight to the records than the jury otherwise would have given them.

Considering the charge as a whole, we determine that it fairly presented the case to the jury and did not promote injustice. The court's instruction regarding the chain of custody of the records was legally correct because the issue of the chain of custody affects the admissibility of the evidence, but not the elements of the offense of obtaining a controlled substance by forgery of a prescription. The court also acted properly in leaving to the jury the task of determining how much weight to give the records and deciding whether there was any evidence of tampering. Because the charge fairly presented the issue, we reject the defendant's claim to the contrary.

## II

The defendant's second claim is that the court undermined his right not to testify by asking whether the defendant wanted to invoke the physician-patient privilege. We disagree.

On direct examination, the state asked Buccheri, the defendant's physician, about the symptoms that caused Buccheri to prescribe Tylenol 3 for the defendant. Buccheri responded that he was concerned about the confi-

dentiality of the defendant's medical history and did not know how much information he could divulge. The state then asked the court to inquire whether the defendant intended to raise the physician-patient privilege. When the court did so, the defendant responded that the jury should not be present at that time. After the court excused the jury, the defendant objected to the court's question. The defendant also moved for a mistrial on the basis of the question. The court denied the motion. When the jury returned, the court instructed it to disregard the issue of the physician-patient privilege because the defendant's medical history was not relevant to the offenses with which he was charged.

The defendant argues that the court should have instructed the jury further that the question about the privilege implicated his right not to testify and that the question and his response did not provide a basis from which the jury could draw an inference adverse to him. The defendant notes, however, that the court's charge to the jury included an instruction on the right not to testify and the jury's duty not to draw an inference adverse to him on the basis of his choice not to testify. The defendant concedes that that instruction was proper. The issue is therefore whether the court improperly omitted an instruction on the right not to testify immediately following the question about the physician-patient privilege.

"[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is

whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 820–21.

We conclude that it is not reasonably possible that the jury was misled by the omission of an additional instruction on the right not to testify. The defendant would not have had to testify in order to assert the physician-patient privilege because his attorney could have asserted it for him. The defendant's medical history, however, was not relevant to the offense with which he was charged, so the privilege had no bearing on the case. The court instructed the jury to disregard the privilege issue. In charging the jury at the conclusion of the trial, the court properly explained the defendant's right not to testify. Taken together, those circumstances lead us to determine that the defendant's right not to testify was not compromised and that the jury was not misled.

### III

The defendant's last claim is that the court insufficiently investigated evidence of possible juror bias. We disagree.

The jury returned its verdict on Monday, November 3, 2003. Following discharge, one of the jurors, Robert Palmer, telephoned a court clerk to report that several police officers had visited his home in Waterford the day before the jury returned the verdict. Palmer was not at home at the time. The officers spoke to Palmer's wife and said that a witness to a burglary had reported seeing a pickup truck at the scene with a license plate number matching Palmer's truck. After determining that Palmer's truck could not have been involved in the burglary, the police left. After learning of that incident, the court scheduled a hearing for Tuesday, November 4, 2003.

Palmer testified that the jury had decided to find the defendant guilty on six of the seven counts on Friday, October 31, 2003. According to Palmer, before the jury began to discuss the remaining count on the following Monday, he told the other jurors about the officers' visit to his home. Although Palmer testified that he wondered whether the officers' visit was related to the defendant's case, he did not tell the other jurors about his suspicion. The jury found the defendant not guilty on the remaining count. Palmer testified that the incident ultimately did not affect his deliberations. The other jurors also testified that the incident was immaterial to their deliberations. The court concluded that the jury had reached the verdict fairly and impartially.

The defendant argues that Palmer's suspicion about a connection between the officers' visit and the defendant's case biased Palmer against the defendant. The defendant contends that the court should have explored the potential bias more fully. "[T]he trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . [Appellate review is limited] to a consideration of whether the trial court's review of an alleged jury misconduct can fairly be characterized as an abuse of its discretion." (Internal quotation marks omitted.) *State* v. *Roman*, 262 Conn. 718, 727, 817 A.2d 100 (2003).

Our review of the court's investigation of the incident at Palmer's home leads us to determine that the investigation was adequate and did not disclose any evidence of juror bias. The court properly questioned the jurors about the impact of the incident on their deliberations and determined that the incident had no effect. Furthermore, the jury had decided to find the defendant guilty on six of the counts before the incident occurred. The jury found him not guilty on the remaining count, which it considered after the incident. "[T]o succeed on a claim of [juror] bias the defendant must raise his con-

tention of bias from the realm of speculation to the realm of fact." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 297, 750 A.2d 1059 (2000). Because the defendant presents only a speculative claim, we reject it.

The judgment is affirmed.

In this opinion the other judges concurred.