******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

IN RE BRIANA G. ET AL.*
(AC 41106)

Sheldon, Prescott and Bear, Js.

*Syllabus*

The respondent father appealed to this court from the judgments of the trial court terminating his parental rights with respect to his minor children. *Held*:

1. The respondent father could not prevail on his claim that the petitioner, the Commissioner of Children and Families, failed to prove by clear and convincing evidence that he had failed to achieve a sufficient degree of personal rehabilitation as required by statute (§ 17a-112 [j] [3] [B] [i]), which was based on his claim that the Department of Children and Families did not provide him with sufficient time and resources to demonstrate that, within a reasonable time, considering the age and needs of each child, he could assume a responsible position in their lives; although the father asserted that because there was some evidence of rehabilitation despite the untimely death of the children's mother and his six month period of incarceration, he could have achieved a sufficient level of rehabilitation if he had been given more time and resources, the trial court's determination of his failure to rehabilitate was not premature, that court having found that the department made reasonable efforts at reunification but that the father was unable to benefit from those efforts, as he did not engage in any substance abuse or mental health services offered to him from the time of the case opening until just prior to his incarceration, he failed to provide the department with the requested documentation of his income in order for it to determine if it could pay for his therapy, he refused to submit to random drug testing on several dates, he continuously denied that he had a substance abuse problem or needed therapy, and he had made very little progress with any mental health treatment through the date of trial.

2. The respondent father failed to establish his claim that the trial court abused its discretion in admitting into evidence the transcripts of certain text messages extracted from the cell phone of the children's mother following her death; the father's claim that the commissioner failed to authenticate properly the messages by demonstrating a proper chain of custody for them concerned the weight of the evidence rather than its admissibility, his assertion that the cell phone was possibly tampered with or altered before being given to the police was not supported by any evidence, and testimony from the children's maternal grandmother and a police detective supported the court's determination that a chain of custody was sufficiently established.

Argued May 30—officially released July 25, 2018**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondent father's parental rights in his minor children, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters, and tried to the court, *Ginocchio, J.*; judgments terminating the respondent's parental rights, from which the respondent appealed to this court. *Affirmed*.

*David V. DeRosa*, for the appellant (respondent).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

BEAR, J. The respondent father, Justin G.,[1] appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families (commissioner), terminating his parental rights with respect to his three minor children, B, L and H.[2] On appeal, the respondent claims that the court (1) prematurely determined that the respondent failed to rehabilitate because the Department of Children and Families (department) did not provide him with sufficient time and resources to do so, and (2) improperly admitted into evidence transcripts of text messages obtained by the police, although a proper chain of custody was not proved prior to their admission. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. On October 2, 2015, the department issued a ninety-six hour administrative hold of newborn baby H after the mother tested positive for use of opiates and marijuana at the time of her birth. On October 6, 2015, the commissioner filed in the Superior Court a neglect petition relating to H, and neglect petitions relating to B and L, who are the two other minor children of the mother and the respondent. In support of her neglect petitions, the commissioner alleged, inter alia, that the parents were using heroin heavily and abusing prescription pills. Additionally, the commissioner filed an ex parte motion for temporary custody of H, which the court granted on that day.

On February 26, 2016, the commissioner filed ex parte motions for temporary custody of B and L, which the court granted on that day. The department subsequently placed the minor children with their maternal grandparents. The respondent was incarcerated for ninety days, from February 26 through May 13, 2016, after he was found to have violated the terms of his probation and after he was convicted of the offense of evading responsibility involving property damage in violation of General Statutes § 14-224 (b) (3). While he was incarcerated, on March 13, 2016, the mother unexpectedly passed away due to complications from cardiopulmonary arrest and acute heroin and cocaine intoxication. On March 17, 2016, the court adjudicated the minor children neglected pursuant to General Statutes § 46b-120 (6) (C).[3]

On March 7, 2017, the commissioner filed petitions to terminate the parental rights of the respondent with respect to each of his three minor children. The sole ground alleged in each of the petitions was General Statutes § 17a-112 (j) (3) (B) (i), failure to achieve a sufficient degree of personal rehabilitation as would encourage the belief that he could assume a responsible position in their lives within a reasonable time.[4] A trial on each of the petitions occurred on September 12 and

13, 2017. By a memorandum of decision dated November 8, 2017, the court found by clear and convincing evidence that the respondent had failed to rehabilitate pursuant to § 17a-112 (j) (3) (B) (i) and that termination of his parental rights was in the best interest of each of the children, and it, therefore, terminated his parental rights with respect to each of them. This appeal followed.

Our standard of review is well established. "A hearing on a termination of parental rights petition consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the court must determine whether the [commissioner] has proven, by clear and convincing evidence, a proper ground for termination of parental rights. . . . In the dispositional phase, once a ground for termination has been proven, the court must determine whether termination is in the best interest of the child. . . .

"Failure of a parent to achieve sufficient personal rehabilitation is one of six statutory grounds on which a court may terminate parental rights pursuant to § 17a-112. . . . That ground exists when a parent of a child whom the court has found to be neglected fails to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child. . . .

"Personal rehabilitation as used in [§ 17a-112 (j) (3) (B) (i)] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . The statute does not require [a parent] to prove precisely when [he] will be able to assume a responsible position in [his] child's life. Nor does it require [him] to prove that [he] will be able to assume full responsibility for [his] child, unaided by available support systems. . . . Rather, [§ 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [the parent] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue. . . .

"A conclusion of failure to rehabilitate is drawn from both the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B). Accordingly . . . the appropriate standard of review is one of evidentiary sufficiency,

that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . We will not disturb the court's subordinate factual findings unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Lilyana P.*, 169 Conn. App. 708, 717–18, 152 A.3d 99 (2016), cert. denied, 324 Conn. 916, 153 A.3d 1290 (2017).

Reasonable time for rehabilitation within the meaning of the statute is a question of fact. *In re Davon M.*, 16 Conn. App. 693, 695–96, 548 A.2d 1350 (1988). "[I]n determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department." (Internal quotation marks omitted.) *In re Shane M.*, 318 Conn. 569, 586, 122 A.3d 1247 (2015). Moreover, "we will not scrutinize the record to look for reasons supporting a different conclusion than that reached by the trial court." Id., 593.

I

On appeal, the respondent claims that the court improperly terminated his parental rights with respect to each of his three children because the commissioner failed to prove, by clear and convincing evidence, that he had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i), because the department did not provide him with sufficient time or resources to rehabilitate due to his ninety day period of incarceration and the untimely death of the mother. In other words, the respondent asserts that because there was some evidence of rehabilitation, if he were given more time and resources, he could have achieved a sufficient level of rehabilitation; therefore, the court's determination of his failure to rehabilitate was premature. We are not persuaded.

In its memorandum of decision, the court noted the respondent's and the mother's mutual focus on illegal drugs. In light of that focus, the department recommended that each of them engage in substance abuse and mental health services. The court found that the respondent "did not engage in any substance abuse or mental health services offered to him from the time of the case opening to just prior to his incarceration." The respondent had not attended individual therapy after December 13, 2016, a period of approximately three months prior to the filing of the petitions to terminate parental rights. Although he claimed that he could not afford therapy, he failed to provide requested documen-

tation of his income in order for the department to determine if it could pay for his therapy.

Although the respondent tested negative for drug use on two urine screens and hair tests on August 11, 2016, and September 27, 2016, he refused to submit to random urine screens on January 23, 2017, and February 21, 2017. According to the commissioner's August 10, 2017 case status report, the respondent was "asked to attend substance abuse screenings seven times [between January 23 through June 29, 2017], all of which he declined to attend. He was also asked to not cut his hair on [April 6, 2017], in anticipation of a hair test, and shortly afterwards he cut his hair very short." The court also noted that he had shaved his head after January 23, 2017, and that there was evidence found at the mother's home, where the respondent lived as well, of a device used to avoid positive urine test results. On March 13, 2016, the police seized drugs and drug paraphernalia from the mother's home. Although the respondent reported to his clinical psychologist that he never abused illegal drugs or prescription medication, the court found that there was overwhelming evidence, by his own admission in a letter sent to the mother and from text messages extracted from her cell phone, that he was using and providing drugs to her and others. It is well documented, as noted by the court, that the respondent had continuously denied that he had a substance abuse problem or needed therapy, and that he has made very little progress with any mental health treatment. Lastly, the court noted that the respondent had failed to provide any documentation of his income or other proof of his ability consistently to provide for his three children.

The court found that all of the services offered to the respondent constituted reasonable efforts at reunification, but that the respondent had been unable to benefit from those reunification efforts.[5] The respondent, therefore, has not established his claim that the court prematurely determined that he failed to rehabilitate because the department did not provide him sufficient time and resources to do so.[6] The court noted that the respondent had not achieved sufficient rehabilitation through the date of the trial although he had been given eighteen months to do so. The evidence at trial amply supported the court's determination by clear and convincing evidence that the respondent failed to achieve an adequate level of rehabilitation within a reasonable time to assume a responsible parenting position in the lives of his children. There is no evidence to suggest that any of the court's subordinate findings were clearly erroneous.

## II

The respondent additionally claims that the court improperly admitted into evidence transcripts of text messages extracted from the mother's cell phone

because the commissioner failed to authenticate properly the messages by demonstrating a proper chain of custody for them, and he hints that the text messages may have been manipulated.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *Catalano* v. *Falco*, 74 Conn. App. 86, 88, 812 A.2d 63 (2002). "The [party opposing admission] has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court's discretion in admitting the evidence." (Internal quotation marks omitted.) *State* v. *Russo*, 89 Conn. App. 296, 301, 873 A.2d 202, cert. denied, 275 Conn. 908, 882 A.2d 679 (2005). Moreover, "[a]ny gap or break in the chain of custody goes to the weight of the evidence rather than its admissibility." *Berkshire Bank* v. *Hartford Club*, 158 Conn. App. 705, 713, 120 A.3d 544, cert. denied, 319 Conn. 925, 125 A.3d 200 (2015); see also *State* v. *Barnes*, 47 Conn. App. 590, 595, 706 A.2d 1000 (1998) ("It is not necessary for every person who handled the item to testify in order to establish the chain of custody. It is sufficient if the chain of custody is established with reasonable certainty to eliminate the likelihood of mistake or alteration." [Internal quotation marks omitted.]).

The respondent asserts in his brief: "There are serious concerns . . . that the [mother's] phone was possibly tampered with or altered before [being] given to the [drug enforcement administration] investigative unit, as there was not a proper chain of custody." The respondent, however, has not provided any evidence supporting this allegation. To the contrary, testimonial evidence from the maternal grandmother and Detective Peter Trahan, supports the court's determination that the chain of custody was sufficiently established. The maternal grandmother testified that she obtained the cell phone as part of the mother's possessions from the hospital, and within approximately an hour handed it over to the Newtown Police Department. Detective Trahan stated that the Newtown Police Department gave the cell phone to Detective Michael Chaves of the Monroe Police Department, who conducted the extraction process. The respondent has failed to establish that the court abused its discretion in admitting as evidence the transcripts of the text messages extracted from the cell phone, and no injustice appears to have resulted from the admission of that evidence.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142

(b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 25, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Because the respondent mother is deceased, we refer to the respondent father in this opinion as the respondent and to the mother as the mother.

[2] Although counsel for the three minor children did not file a brief or statement as required pursuant to Practice Book § 67-13, during oral argument before this court, she supported the position of the commissioner.

[3] General Statutes § 46b-120 (6) provides in relevant part: "A child or youth may be found 'neglected' who, for reasons other than being impoverished . . . (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth."

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court . . . determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[5] The court found that prior to the date of the filing of the petitions for termination of parental rights, the department made reasonable efforts to reunify the children with the respondent. Alternatively, the court found by clear and convincing evidence that, as of the date of its decision, the respondent had been unable to benefit from reunification efforts. See *In re Jorden R.*, 293 Conn. 539, 554, 979 A.2d 469 (2009) ("although § 17a-112 [j] begins with a presumptive obligation that the department make reasonable reunification efforts, it later excuses this obligation in cases in which a trial court finds, by clear and convincing evidence, that a parent is unable or unwilling to benefit from such reunification efforts").

[6] The court found by the clear and convincing evidence standard that the respondent was "unable to achieve rehabilitation within a reasonable period of time . . . given the age and needs of [his children]."

―――――――――――――――――――――